**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**ANTONIO DEVARGAS, as Personal Representative
of the Estate of Carmela DeVargas, deceased, and
A.D., by and through his Adoptive Father and
Next Friend, Antonio DeVargas,**

        **Plaintiffs,**

**v.**                                    **C.A. No. <u>21-CV-271 RB-SCY</u>**

**THE BOARD OF COUNTY COMMISSIONERS
FOR SANTA FE COUNTY and PABLO SEDILLO
III, DEREK WILLIAMS, MELQUIADES
OLIVARES, LIEUTENANT ROJAS and CAPTAIN
RIOS, in their Individual Capacities.**

**PLAINTIFFS' RESPONSE TO DEFENDANT OLIVARES' MOTION TO QUASH
SUBPOENA AND FOR PROTECTIVE ORDER**

      Plaintiffs respectfully move the Court to deny the motion filed by Defendant Olivares

seeking to prevent Plaintiffs from obtaining highly relevant evidence from the New Mexico

Medical Board ("Board") regarding Defendant's treatment of Carmela DeVargas, deceased and

his treatment of other inmates at the Defendant Santa Fe County Detention Center.  Defendant

does not dispute the relevance of the documents sought in the subpoena served on the Board, has

failed to file a privilege log, and has, in fact, failed to identify any privilege recognized by

federal law, but nonetheless incorrectly contends that all of the documents sought from Board are

privileged in this federal lawsuit.  As grounds therefore, Plaintiffs state as follows:

      **I.**     **Statement of Facts**

      Plaintiff Antonio DeVargas, as Personal Representative of the Estate of Carmela

DeVargas, brings this action under 42 U.S.C Section 1983 and alleges, *inter alia*, that Defendant

Olivares's deliberately indifferent failure to provide constitutionally adequate medical attention

to Ms. DeVargas while she was a pretrial detainee at the County Detention Center directly

caused her to suffer terrible physical pain and emotional suffering and was a direct cause of her

death in 2019.  Plaintiff alleges that Defendant's conduct violated Ms. DeVargas's Fourteenth Amendment right to due process as guaranteed by the United States Constitution.  Plaintiff seeks punitive damages against Defendant Olivares on this claim. Plaintiff alleges that Defendant County is liable under the New Mexico Tort Claims Act because its employee, Defendant Olivares, negligently caused the injuries to and death of Ms. DeVargas.  Plaintiff DeVargas, as the Next Friend of Ms. DeVargas's minor child, A.D. alleges that Defendant County is liable to A.D. under the New Mexico Tort Claims Act because of the negligent conduct of Defendant Olivares. *Doc. 5.*

Plaintiff further alleges that other inmates suffered serious injury and/or death due to the improper and inadequate medical treatment by Defendant Olivares during the same three-week period that Ms. DeVargas was an inmate.  Plaintiff contends that the failure to provide inmates with adequate medical care at the Detention Center was an ongoing problem, that the Defendant County acted with deliberate indifference in failing to properly supervise Defendant Olivares and the medical treatment provided to County inmates was a cause of Ms. DeVargas's death. Plaintiff alleges that Defendant County is liable, *inter alia*, because it breached its duty to properly supervise Defendant Olivares.  *Doc. 5,* ¶¶ 103-105, 108,109, 112(c), and 133.

On December 9, 2021, Plaintiff served a Subpoena to the New Mexico Medical Board. *Doc.* 53-1.  The subpoena commanded the Board to produce the following documents:

(1)  Any complaint filed by Plaintiff Antonio DeVargas (regarding Defendant Olivares).[1]

(2)  All investigative material related to those complaints, including but not limited to any investigative materials concerning Defendant Olivares's treatment of his daughter, Carmela DeVargas.

(3)  Any other complaints made against Defendant Olivares from January 1, 2012, to December 9, 2021, and all investigative material related to those complaints.

---

[1] Shortly after the death of his daughter, Plaintiff filed a complaint with the Board against Defendant Olivares.

On December 30, 2021, Michael Nunez, Administrative Prosecutor for the Board, emailed counsel for Plaintiff that the Board believed that all of the documents sought were privileged under state law and protected from discovery in this federal action by Section 61-6-34 NMSA *Doc.* 53-2. Counsel for Plaintiff emailed Mr. Nunez that Plaintiffs believed the records sought were in fact subject to discovery in this federal civil rights action against Defendant Olivares and noted that Mr. Nunez's email had not contained any case citations holding that records concerning complaints made against a doctor who was a defendant in a federal suit alleging unconstitutional or negligent conduct were not discoverable. The email further stated that Plaintiff was "certainly willing to enter into an appropriate protective order that ensures that the documents will only be used in the course of this litigation. We ask that you give consideration to this idea and send us a draft protective order." *Plaintiff's Ex. 1*, email from Richard Rosenstock to Michael Nunez. The Board did not respond to this offer to resolve concerns of confidentiality, nor did it agree to produce the documents, nor did it file a motion to quash or for protective order.

On January 3, 2022, counsel for Defendant Olivares asked counsel for Plaintiff if Plaintiff would concur in a Motion to Quash the subpoena served on the Board. Plaintiff informed counsel for Defendant that he would not, but reiterated that Plaintiff would agree to a protective order to address any concerns about confidentiality and asked counsel for Defendant to draft a proposed order that would meet Defendant's concerns. Counsel for Defendant did not reply. Instead, on January 4, 2022, Defendant Olivares filed a Motion to Quash, alleging that under Section 61-6-34 NMSA Plaintiff is barred from discovering any records regarding the Medical Board complaint Plaintiff filed against Olivares for his alleged unlawful treatment of Carmela DeVargas[2] or any records regarding complaints by others of improper medical treatment by Defendant. Through his Motion to Quash, Defendant Olivares seeks to prevent

---

[2] Plaintiff is unable to locate his copy of his letter of complaint.

discovery of all of the records sought by Plaintiff's subpoena to the Medical Board. *Doc. 53.*

Defendant's motion does not dispute the obvious relevance of the material sought, but claims

discovery of documents concerning Plaintiff's complaint, including any admissions he may have

made during the investigation of that complaint, and information concerning others' allegations

of mistreatment of inmates and other patients are privileged and not discoverable.

Defendant Olivares makes a blanket assertion of privilege as to all the documents sought

by the subpoena. Significantly, Defendant fails to comply with the requirements of Rule 26(b)(5)

of the Federal Rules of Civil Procedure by his failure to file a privilege log setting forth

information about the nature of each of the documents he claims are privileged. For the reasons

set forth hereinafter, Defendant's motion is not well taken and should be denied.

## II.    Legal Authority Regarding Discovery, Particularly in Civil Rights Cases

The Tenth Circuit has repeatedly stated that the scope of discovery in a civil rights case is

extensive. *See Rich v. Martin Marietta Corp.,* 522 F.2d 333, 343 (10th Cir. 1975); *Weahkee v.*

*Norton,* 621 F.2d 1080, 1082 (10th Cir. 1980). This is particularly true in cases such as this,

where the defendant denies any wrongdoing or any constitutionally impermissible intent or

motive behind his conduct. *Denver Policemen Protective Ass'n v. Lichtenstein,* 660 F.2d 432,

436 (10th Cir. 1981). The foregoing case, which rejected claims that police officer disciplinary

complaints and related records were confidential and privileged from discovery, relied heavily

on the decision in *Wood v. Breier,* 54 F.R.D. 7 (E.D. Wisc. 1972), which held:

> Rule 26(c) of the Federal Rules of Civil Procedure grants the Court the power to suppress
> discovery. However, in a case such as this the arguments for suppression must be of such
> great weight as to overcome not just one but two major congressional and judicial policy
> decisions. The first of these is the broad federal mandate for discovery in all civil actions.
> This mandate reflects the decision that "a trial [should be] less a game of blind man's
> bluff and more a fair contest with the basic issues and facts disclosed to the fullest
> practicable extent."
>
> The second public policy that is challenged by this Motion for Suppression is that
> reflected in Section 1983 itself. "Its purpose is plain from the title of the legislation, 'An
> Act to Enforce the Provisions of the Fourteenth Amendment to the Constitution of the
> United States, and for other Purposes.' 17 Stat.13." But it is the manner of enforcement

which gives Section 1983 its unique importance, for enforcement is placed in the hands of the people.  Each citizen "acts as a private attorney general who 'takes on the mantel of the sovereign,'" guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all.  Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden."

All footnotes omitted.

Rules 26 through 37 have been interpreted liberally to allow maximum discovery. *Hickman v. Taylor,* 329 U.S. 495 (1947). It is clear that what is relevant in discovery is far different from what is relevant at trial, relevance at the discovery stage is much broader. *See* C. Wright*, Law of Federal Courts,* 403 (1976).  Discovery is designed to define and clarify the issues. If requested materials are reasonably calculated to lead to discovery of admissible evidence, the discovery request is relevant. F.R.Civ.P. 26 (b)(l); *Weddington v. Consolidated Rail Corp.,* 101 F.R.D. 71, 73 (N.D. Ind. 1984). Therefore, discovery requests should be complied with if there is a reasonable possibility that the information sought may be relevant to the subject matter of the action. *Sherman Park Community Association v. Wauwatosa Realty,* 485 F.Supp. 838, 845 (E.D. Wis.1980).  The burden of showing that the requested discovery is not relevant to the issues is clearly on the party resisting discovery. *Flora v. Hamilton,* 81 F.R.D. 576 (M.D.N.C. 1978); *Zucker v. Sable,* 72 F.R.D. 1, 3 (S.D.N.Y. 1975).  Significantly, Defendant's motion does not argue that the records sought in the subpoena are not relevant.

A party seeking to assert that relevant material is barred from discovery because it is privileged has the burden of establishing both the existence and applicability of the claimed privilege.  *Barclaysamerican Corp. v. Kane,* 746 F.2d. 653, 656 (10th Cir. 1984).  The Tenth Circuit uses a three-prong test to determine when a party's assertion of a privacy interest outweighs competing interests, including the compelling interest in ascertaining the truth. "In applying this test the court must consider, (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure

can be made in the least intrusive manner." *Denver Policemen Protective Ass'n v. Lichtenstein, supra,* 660 F.2d at 435. The Court noted that "it is of special import" that cases brought under Section 1983 be resolved "by a determination of the truth rather than by a determination that the truth shall remain hidden," *Id.* at 436 (citation omitted). *Id.; see also, Dorato v. Smith,* 163 F.Supp. 3d. 837, 891 (D.N.M. 2015) (police officer pre-employment psychological records were not privileged from discovery in a section 1983 case). Thus, courts "construe privileges particularly narrowly in § 1983 claims, 'where an assertion of privilege must 'overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.'" *Tanner v McMurry,* 405 F. Supp. 3d. 1115, 1196 (D. N.M. 2019) (citations omitted).

Moreover, courts are reluctant to apply state law privileges that seek to bar information about medical treatment in the prison health care context to federal actions challenging such treatment, even where similar information might be dealt with differently in another context. Where prison health care is at issue "[i]t is particularly important that the public have access to the assessment by peers of the care provided." *Agster v Maricopa Cty.,* 422 F.3d, 836, 839 (9th Cir. 2005) (holding that Arizona's statutorily created peer review privilege was inapplicable to federal action alleging that improper medical treatment at county jail caused inmate's death). As Judge Browning stated in a Section 1983 action: "the public has a strong interest in preserving the free flow of information relating to health care provision and standards in the context of a jail or prison's medical facility." *Tanner, supra,* 405 F. Supp. 3d. at 1219. Moreover, it is well established that a protective order will sufficiently protect information about medical treatment. *Id.* at 1212.

### III. Defendant Olivares Waived His Right To Assert Any Claim Of Privilege Because He Failed To Provide A Privilege Log And/or Because Of His Blanket Assertion of Privilege.

It is well established that "[w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation

material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege protection." *Rule 26(b)(5)(A), Fed. Rules of Civil Proc.*

"This detailed and specific showing is typically presented in the form of a privilege log. 'The law is well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege.'  'A "blanket claim" as to the applicability of the work product doctrine does not satisfy the burden of proof.'" *Griego v. Douglas,* 2018 WL 2376330  at *3 (D. N.M.) (citations omitted).

In *Griego,* the court found that the defendant "provided no privilege log for the documents in her possession that were relevant to Plaintiffs' request for witness statements, leaving Plaintiffs, and this Court, without the ability to assess her claims of privilege.  Instead, Defendant broadly objected that the witness statements in her possession are protected as material prepared in anticipation of litigation." The Court held that "under these circumstances, the Court finds that Defendant has waived the work-product privilege as to the witness statements in her possession. As such, the Court orders their disclosure." *Griego v Douglas,* 2018 WL 2376330  at *3.

In this case, Defendant Olivares has failed to comply with the requirements of Rule 26(b)(5)(A) because he not provided a privilege log "setting forth the nature of the documents, communications, or things not produced or disclosed."   Defendant's failure to comply has prevented Plaintiff and the Court from assessing the applicability of his claim of privilege as to each document he objects to having produced.   Moreover, Defendant has made the type of blanket claim of privilege in a manner that the courts have rejected. *Id.; Moses v. Halstead,* 236 F.R.D. 667, 676 (D.Kan. 2006) (blanket claim of work-product privilege does not satisfy burden of proof required of objecting party).

**IV.  The Documents Sought in the Subpoena Are Discoverable Because Defendant Has Failed to Meet His Burden of Proving that His Interest in Barring Discovery of Records About Allegations of Misconduct Concerning His Treatment of Carmela DeVargas and Others Outweighs Plaintiff's Interest in Ascertaining the Truth.**

When a case involves both federal and supplemental state claims that stem from a common set of facts, federal privilege law applies to all claims.  *Tanner v McMurry, supra,* 405 F. Supp. 3d. at 1213-1214; *Dorato v Smith,* 163 F. 3d. Supp. 837, 882 (D. N.M. 2015); *Agster v Maricopa Cty., supra,* 422 F.3d, 839.

There is no federal privilege that bars discovery of information contained in the disciplinary proceedings of a state agency, including a medical board, and Defendant Olivares does not claim there is.  Rather, Defendant's motion to quash is entirely premised on his claim that New Mexico state law, Section 61-6-34(B), NMSA, creates a privilege that bars discovery of any and all written communications to the Medical Board that relate to actual or potential disciplinary actions against doctors.[3] As set forth hereinafter, such documents are not privileged from discovery when said material is relevant to claims made in a federal civil rights action alleging improper medical care was rendered at a correctional facility. As previously stated, Defendant's motion does not argue the documents sought are not relevant to the instant claims.[4]

It is a settled law that the federal courts should not create and apply an evidentiary

_____

[3] The first sentence of Section 61-6-34(B), NMSA, simply states that communications to the Board regarding potential or actual disciplinary matters are considered "confidential communications" and not public records for the purposes of the New Mexico Inspection of Public Records Act.  Defendant appears to claim that the following sentence, which states that communications and information acquired by the board relating to actual or potential disciplinary action "shall not be disclosed except to the extent necessary to carry out the board's purposes or in a judicial appeal from the board's actions" creates a blanket evidentiary privilege that bars discovery of this information in any type of state or federal court action except for judicial appeals from the Board's actions taken against a doctor. Defendant does not explain why this information can be disclosed in a state court judicial appeal of Board action taken against a doctor but cannot be disclosed in a federal court judicial action against a doctor.  Defendant Olivares cites no cases holding this statute creates a blanket evidentiary privilege in federal proceedings.

[4] Because Defendant's Motion does not argue the documents sought are not relevant, Plaintiff has minimally set forth arguments regarding that issue.  Defendant should not be permitted to "sandbag" Plaintiff by raising the issue of relevance for the first time in his Reply brief.

privilege unless it "promotes sufficiently important interests to outweigh the need for probative evidence." *Univ. of Pa. v EEOC,* 493 U.S. 182, 189 (1990). The federal courts within the Tenth Circuit and elsewhere have consistently ruled that where there is no federal privilege, a state law privilege will not bar the discovery of evidence relevant to a Section 1983 claim because the interest in obtaining the truth in these federal actions is a more compelling interest than the privacy interest protected by a state statute. The federal courts have a strong federal policy overruling claims of state law confidentiality and/or privilege and allowing discovery in federal civil rights actions. The Tenth Circuit has ruled that a court must analyze the following factors to determine whether documents are privileged from discovery in the absence of a federal privilege: (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner. *Denver Policemen Protective Ass'n v. Lichtenstein, supra,* 660 F.2d. at 434.

Defendant fails to present any argument why the discovery of documents regarding allegations of misconduct made against him by Plaintiff regarding the medical treatment Defendant provided to Carmela DeVargas while she was an inmate should be barred from discovery except to claim that he believes the state statute constitutes a "promise" of confidentiality to him. *Doc. 53 at p. 4.* On the other hand, disclosure of this information serves a compelling state interest -- the ascertainment of the truth about the medical care given to Carmela DeVargas and others while incarcerated.

Plaintiff filed a complaint against Defendant with the Board regarding Defendant's treatment of his daughter while she was an inmate at the Santa Fe County Detention Center. An investigation should have ensued which would have included obtaining a response from Defendant Olivares and possibly others at the Detention Center about his treatment of Ms. DeVargas. Disclosure of this information will enable Plaintiff to obtain evidence that is relevant to his allegation that Defendant's misconduct was a cause of the death of Carmela DeVargas.

Indeed, statements made by Defendant are an admission and may well contain evidence not just relevant but critical to the issue of his treatment of Ms. DeVargas, as well as to his credibility. Furthermore, the fact that the federal and state claims against Defendant concern the treatment of an inmate in a public correctional facility provide an even greater interest in the disclosure of the information sought in the subpoena to the Board. As Judge Browning held: "the public has a strong interest in preserving the free flow of information relating to health care provision and standards in the context of a jail or prison's medical facility." *Tanner, supra,* 405 F. Supp. 3d. at 1219.

Additionally, the Amended Complaint alleges that other inmates at the County Detention Center suffered serious injury[5] or death due to the improper medical treatment rendered by Defendant, that the improper medical treatment of inmates had been going on before Carmela DeVargas became his patient, and that Defendant County failed to properly supervise the medical care given to inmates by Defendant Olivares. Thus, evidence in the possession of the Board regarding other complaints made against Defendant may contain information relevant to this claim as such information would reflect on what Defendant County knew or should have known about Defendant Olivares's work performance and its alleged improper supervision.

In *Watson v. City of Kansas City,* 857 F2d. 690, 696 (10th Cir. 1988), the Court held that custom and policy claims usually require a plaintiff to present evidence of a pattern of acts of misconduct beyond their own incident to show a pattern of deliberate indifference by the employer. In *Gonzales v. Martinez,* 403 F.3d 1179 (10th Cir. 2005), the Court found evidence of prior acts of misconduct by deputies alleged to have raped Plaintiff and by other deputies, as well as the inadequate investigations of those acts by the Sheriff were sufficient to require reversal of summary judgment for the Sheriff on the inmate's Eight Amendment supervisory claims. *See,*

---

[5] The Amended Complaint mistakenly referred to inmate Ronald Martinez as "Ronald Trujillo" concerning Mr. Martinez's MRSA infection allegedly suffered as a result of the inadequate care provided by Defendant. *Doc. 5,* at ¶103.

*Tafoya v. Salazar,* 516 F.3d 912, 920 (10th Cir. 2008); *Keith v. Koerner,* 843 F.3d 833, 846-47 (10th Cir. 2016); *Gutierrez-Rodriguez v. Cartagena,* 882 F.2d. 553, 572 (1st Cir. 1989). Notably, these cases involved summary judgment or trial admissibility issues, not mere discovery.

The information sought by Plaintiff's subpoena is also relevant to the issue of Defendant Olivares's credibility and to Plaintiff's claim that he is entitled to punitive damages because Olivares acted willfully and with deliberate indifference to the health and well-being of Ms. DeVargas.  *Smith v. Wade,* 461 U.S. 30, 55 (1983).  Since it is Plaintiff's burden to prove Defendant's intent, evidence of a pattern of use of improper medical treatment by Olivares and the County is discoverable for this purpose.  Additionally, to the extent any of the documents concern incidents that occurred after 2019, evidence of subsequent acts is routinely admitted *at trial* under Rule 404(b), F. R. Evid., to prove knowledge, intent and lack of mistake.  *See, e.g., United States v. Zamora*, 222 F.3d 756, 766 (10th Cir. 2000); *U.S. v. Mares*, 441 F.3d 1152 (10th Cir. 2006) (evidence of defendant's conduct a year after the incident at issue admissible at trial); *Tom v. S.B. Inc,* 2013 WL 12097632 *2-3 (D. N.M. 2013); *Peshlakai v. Ruiz,* 39 F.Supp. 3d 1264, 1342-43 (D.N.M. 2014).

The compelling interest in allowing Plaintiff to discover the evidence sought in the subpoena clearly outweighs Defendant's assertion that Section 61-6-34(B) is a "promise" made to him that evidence of his alleged misconduct would be confidential.  In fact, other than Defendant's desire to keep documents concerning his treatment of Ms. DeVargas and others hidden, he presented no argument as to how the public's interest would be served by barring this information from discovery in this federal civil rights action. This is particular true in this case because Plaintiff has agreed to the entry of a protective order to prevent the use of the information outside the context of this litigation.[6]  The entry of a protective order for medical information and other information alleged to be confidential is a common practice in this

---

[6] Defendant does not present any argument as to why a protective order would not address his concerns.

District. *See, e.g., Tanner v McMurry, supra,* 405 F. Supp. 3d. at 1212, and is sufficient to satisfy the "least intrusive manner" factor of the test adopted by the Tenth Circuit in *Denver Policemen Protective Ass'n v. Lichtenstein, supra,* 660 F.2d. at 435.

In *Denver Policemen Protective Ass'n v. Lichtenstein,* the Tenth Circuit expressly rejected an argument similar to that made by Defendant in his Motion to Quash. There, a police union claimed that internal affairs investigative documents were confidential and that discovery of that information would violate the constitutional right to privacy of police officers. The Court held that while officers had a privacy interest in the confidentiality of such documents, that interest did not create an absolute privilege barring discovery and that the interest in disclosure of those documents was greater than the officers' privacy interests. The Tenth Circuit quoted *Wood v. Breier, supra,*54 F.R.D. at 12, a Section 1983 action by a citizen against police, wherein the court found that the police chief was not entitled to a protective order preventing discovery of police investigative files, stating that "it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden". *Denver Policemen Protective Ass'n v. Lichtenstein, supra,* 660 F.2d. at 434.[7]

Likewise, it is clear that state law privileges designed to prevent disclosure of the medical treatment of inmates do not bar discovery of that information in federal actions. In *Tanner v. McMurry, supra,* 405 F. Supp. 3d., the court held that neither a state law privilege protecting disclosure of peer review documents about medical treatment rendered to patients nor the critical analysis privilege barred discovery of materials regarding the treatment of inmates at a county detention center in a case alleging both deliberately indifferent medical treatment under Section 1983 and negligence under state tort law.

*Estate of Jeffrey Scott Lillis v. Correct Care Solutions,* 2019 WL 9364162 at *3 (D. Col.

---

[7]  See, also, **Error! Main Document Only.***Flanagan v. Munger*, 890 F.2d 1557, 1570-71 (10th Cir. 1989) (holding that the reprimand of a police officer is not protected by any constitutional privilege and that a city policy, regulation or custom treating personnel records as confidential does not create such a privilege.)

2019), was a Section 1983 case arising out of the death of an inmate at the Arapaho County Jail wherein the plaintiff claimed the decedent died as a result of the deliberately indifferent conduct of the jail doctor and nurse. The plaintiff sought all documents from the Colorado Medical Board concerning its investigation into the treatment provided to the deceased by the defendant doctor. The defendants objected, claiming the documents were absolutely privileged under the state statutory peer review law. The defendants pointed out that the main policy reason for the Colorado peer review privilege is to safeguard the integrity of the medical professional disciplinary process under state statutory peer review privilege. The court rejected the applicability of the state law privilege and ordered the production of the documents. Citing to *Leon v. County of San Diego,* 202 F.R.D. 631, 636 (S.D. Cal. 2001), the court held that: "[T]he absolute bar on discovery provided by Colorado's statutory peer review privilege conflicts with the liberal discovery rules applicable in federal courts, and it conflicts with the necessity of finding state action inherent in the federal civil rights law."

*Leon v. County of San Diego,* 202 F.R.D. 631 (S.D. Cal. 2001), was a Section 1983 action and state negligence claim arising out of the death of a county jail detainee allegedly due to the deliberately indifferent treatment by the jail doctor and the improper supervision of the doctor by the County. Plaintiff sought peer review documents for a five-year period regarding the medical treatment provided by the doctor and the County. Defendants claimed a California statute created an evidentiary privilege that barred discovery of the documents sought. The court rejected this argument, holding that:

> The claims made here are federal constitutional claims against a non-federal government agency. It thus appears particularly inappropriate to allow the use of state evidentiary privileges. "It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state or local authorities.

*Id.*, at 636.

The courts have issued similar rulings in other types of Section 1983 claims and in

malpractice claims.  *Dorato v. Smith, supra,* 163 F. Supp. 3d. 387, involved claims of excessive force and improper supervision. The plaintiff sought psychological records of police officers, documents that are obviously not public records.  The court recognized the defendants' privacy interest in their psychological records, but concluded that "the compelling interest in ascertaining the truth overrides the officers' legitimate expectations of privacy." *Id. at* 891.  The court also recognized the importance of having cases that are brought under Section 1983 resolved "by a determination of the truth rather than by a determination that the truth shall remain hidden." *Id. at* 891.  *See also, Martinez-Lopez v. Pusedu,* 2020 WL 6701067 (D. Col.) (officer's legitimate privacy interest in his psychological records was outweighed by "an even more compelling interest in the public's right to rely upon proper evaluation of individuals applying to become law enforcement officers and who will have both the authority and means to police the citizenry").

In *Sonnino v. University of Kansas Hosp. Authority,* 229 F.R.D. 633, 644 (D. Kan. 2004), the Hospital defendants claimed that the peer-review privilege contained in K.S.A. 65-4915 barred discovery of medical peer-review documents in the plaintiff's Section 1983 case. That statute was substantially stronger than §61-6-34(B) NMSA, relied on by Defendant here.  It stated that, with certain exceptions, "[T]he reports, statements, memoranda, proceedings, findings and other records of peer review committees or officers *shall* be privileged and shall not be subject to discovery, subpoena or other means of legal compulsion for their release to any person or entity or be admissible in evidence in any judicial or administrative proceeding." The Hospital Defendants there also relied on the privilege contained in K.S.A. 65-4925, which provided that reports and records made pursuant to the Kansas Risk Management statutes are confidential and privileged.

The District Court rejected the argument of Defendants, noting that "It is well settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that the they are confidential." *Id.* at

642 (citations omitted).  Looking at the "vast majority" of federal court decisions the court held:

> the reasoning presented in these cases is persuasive, and the Court agrees with the conclusions of these cases that the interest in obtaining probative evidence in an action for discrimination outweighs the interest that would be furthered by recognition of a privilege for medical peer review or risk management materials. As in this case, the plaintiffs in the above-cited discrimination cases argued that the discovery was relevant to show that the they were treated differently in the peer review process than other similarly situated physicians.

*Id. at* 644.

In *D.M. by and through Morgan v. Wesley Medical Center, LLC*, 2019 WL 2250220 D. Kan. 2019), a medical malpractice case, the District Court denied a motion to quash a subpoena that sought records regarding the treatment of plaintiff, a minor.  The court denied the motion to quash, stating:

> the fact remains that the peer review and risk management privileges have not been recognized in this District or the Tenth Circuit. In the absence of Congressional directive, this Court should be cautious imposing restrictions on the discovery of evidence relevant to federal claims. Defendants have not persuaded the Court to recognize an entirely new federal court privilege under the circumstances presented.

*Id.*, at *2.

The case law cited by Defendant does not support a deviation from the approach taken by the Tenth Circuit and the district courts within it.  None of those cases, most of which are 11th Circuit cases based on the application of Georgia law, concern the discovery of information regarding the adequacy of the medical treatment provided to inmates at a correctional facility or elsewhere. *Alig-Mielcarek v Jackson,* 286 F.R.D. 521 (N.D. Ga. 2012), arose out of a copyright infringement case filed in Ohio federal court.  After filing a 137-item request for documents with the defendant in the Ohio action, the plaintiff served a subpoena on co-defendant Clark Atlanta University for the same items in Georgia federal district court. The subpoena sought educational records of numerous students at Clark Atlanta University, including those of the defendant Jackson, whom plaintiff claimed had plagiarized her dissertation.   Clark Atlanta argued that the records were protected from disclosure under the Family Educational Rights and Privacy Act of

1974 ("FERPA").  The Georgia district court noted that FERPA did not prohibit the discovery of relevant educational records but that the federal courts have held that under FERPA, before judicial approval is given, the party seeking discovery is required to demonstrate a genuine need for the information that outweighs the "significant" privacy interests of the students, a burden the court described as a "significantly heavier burden". *Id. at* 526-527.  Notably, Clark Atlanta admitted that the educational records of defendant Jackson were discoverable, but objected to producing the records of non-party students.

The court noted that federal courts had compelled disclosure of non-party educational records of similar complaints to that made by a plaintiff against a defendant when the information was "clearly relevant" to the plaintiff's claims and the defendant's burden of production was "minimal." *See. e.g.,  Natasia v. New Fairfield Sch. Dist.,* 2006 WL 1699599 (D. Conn.). However, the court noted that the *Alig-Mielcarek* plaintiff sought "reams" of documents regarding the educational records of students other than defendant Jackson without any limitation in time or scope. The court held that while there was some relevance to some of the discovery requests, the subpoena to Clark Atlanta was "substantially overbroad and, as currently drafted, not justifiable, especially in light of FERPA."  *Alig-Mielcarek v Jackson, supra,* 286 F.R.D. at 527.

In the instant case, Plaintiff's subpoena to the Board seeks only records regarding Defendant Olivares's conduct.  He does not seek records concerning complaints made against other doctors who are not defendants in this case.  The scope of time is limited.  Significantly, in *Alig-Mielcarek v. Jackson,* Clark Atlanta admitted that the educational records concerning the defendant were discoverable. Here, Defendant Olivares seeks to bar discovery even of records concerning his treatment of Carmela DeVargas.  Additionally, unlike *Alig-Mielcarek v. Jackson,* Defendant Olivares does not point to a privilege or privacy interest he has under **federal law**. Moreover, the relevance of the information sought in the subpoena to the Board is clear and was

not disputed by Defendant Olivares in his Motion to Quash.  In addition, there is no burden on Defendant concerning the physical production of these documents because the subpoena was not issued to him and he is not the one required to produce the records sought.

*Jordan v. Commissioner, Mississippi Dept. of Corrections,* 947 F.3d. 1322 (11th Cir. 2020), involved a challenge to Mississippi's lethal injection law by death-row inmates. The plaintiffs were not seeking records regarding their own medical treatment.  Rather, plaintiffs argued that Mississippi should be required to utilize alternative lethal injection protocols used by other states, including Georgia, which had used a one-drug protocol that requires a single injection of compounded pentobarbital in its most recent executions. The plaintiffs served the Georgia Department of Corrections ("GDC") with a non-party subpoena that directed the GDC to appear at a Rule 30(b)(6) deposition and to produce documents concerning the feasibility of a one-drug lethal injection protocol using pentobarbital, including specific details about the GDC's source and manner of acquiring pentobarbital.

The GDC filed a motion to quash the subpoena in the Northern District of Georgia, arguing that the information sought in the subpoena was irrelevant to the claims asserted in the underlying Section 1983 litigation, that it was protected from disclosure by Georgia's Lethal Injection Secrecy Act and other privileges, and that disclosure would impose an undue burden on the State. The Eleventh Circuit upheld the granting of the motion to quash.  It found the relevance of the information sought to the plaintiff's claims to be "highly questionable." It found that information about Georgia's supply and use of pentobarbital could not help plaintiffs prove there was a feasible alternative to Mississippi's lethal injection protocol. The court found that disclosure of the information was, based on past history, likely to lead to threats and harassment of the pharmacy that supplied the drug to Georgia.

The court did not find the Georgia statute barred discovery.  Rather, the court concluded that the subpoena should be quashed because it subjected the GDC to an "undue burden" under

Fed. Rule of Civ. Proc. 45(d)(3)(A)(iv), which requires the quashing of any subpoena that would impose such a burden on the target of a subpoena. *Id. at* 1337. The court noted that the undue burden analysis required it to "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it" and concluded that Georgia had a strong interest in enforcing its criminal laws, including its death penalty laws; that the relevance of the information to Plaintiffs' Mississippi case was marginal to non-existent; and that Georgia's interests clearly outweighed Plaintiffs' interests in disclosure.

In the instant case, Plaintiff's subpoena seeks a narrow set of records, some, perhaps many, of which appear to concern Defendant's treatment of Carmela DeVargas while she was an inmate at the Santa Fe County Detention Center. Defendant's treatment of Ms. DeVargas is a core issue in this lawsuit, information concerning this issue is clearly relevant to Plaintiff's claims. The Board did not file a motion to quash alleging compliance with the subpoena would create "an undue burden" on it. There are no allegations in Defendant's motion that the Board (or he) would be subjected to harassment or threats if the information sought in the subpoena is disclosed. Most importantly, the district courts within the Tenth Circuit have repeatedly held that information concerning the treatment of inmates at a public correctional facility is a matter of public interest and is discoverable.

*McGoy v. Ray*, 164 Fed. Appx. 876 (11th Cir. 2006), involved an appeal of the denial of the plaintiff's efforts to delay ruling on a motion for summary judgment by filing a Rule 56(f) motion which had been denied by the district court. The court did not hold that a state statute created a privilege that barred discovery of relevant evidence. Rather, the court applied a balancing test and found the plaintiff had failed to show how the documents he sought would help him prove his claim that Georgia's retroactive application of a policy requiring inmates to serve 90 percent of their sentences violated his constitutional rights.

Finally, *Porter v. Ray,* 461 F.3d. 1316, 1324 (11th Cir. 2006), involved issues similar to

*McGoy, supra.* The court noted that the appellants had correctly asserted that courts must not "blindly accept" the Parole Board's contention that parole records are confidential. However, as in *McGoy, supra,* the court found that the appellants had failed to show how the discovery they sought could show that the Board unlawfully applied a de facto 90% policy to them and that they had failed to meet their burden when requesting discovery that the State of Georgia has deemed confidential.

Neither of these Eleventh Circuit cases support Defendant's efforts to keep information about his medical treatment of Ms. DeVargas and others hidden from discovery. Unlike those cases, in this case the information sought in the subpoena goes to the heart of Plaintiff's claims against Defendant Olivares regarding his alleged deliberately indifferent and/or negligent treatment of Ms. DeVargas and to the crux of Plaintiff's claims that Defendant County failed to properly supervise Defendant Olivares and the medical treatment of inmates at its Detention Center. Moreover, information concerning the treatment of inmates at correctional facilities, including evaluations of such treatment, has repeatedly been held discoverable by the federal courts within the Tenth Circuit.

**V. Conclusion.**

The information sought by Plaintiff in the subpoena to the Medical Board is highly relevant to his claims. Defendant did not dispute this in his Motion to Quash. It is the type of information or similar to information that the courts in this District as well as the federal District courts in Colorado and Kansas have repeatedly held is discoverable. Defendant Olivares made no showing in his Motion to Quash that he would suffer any burden, no less an undue burden, by the Board disclosing this information in this federal civil rights action. Moreover, given that Plaintiff has agreed to the entry of a protective order, there would be no burden imposed on Defendant by disclosure. In contrast, the interests of Plaintiff and the public in obtaining disclosure of the conduct of a person employed as a doctor by Santa Fe County to provide

medical treatment to inmates would be seriously impacted.  Defendant's Motion to Quash is not

well taken and should be denied in its entirety.

Respectfully Submitted,

 /s/ Richard Rosenstock
 Richard Rosenstock
 1121 Paseo de Peralta
 Santa Fe, NM 87501
 (505) 988-5324 Fax:(505) 989-4844
 richard.rosenstock@gmail.com

 Daniel Yohalem
 1121 Paseo de Peralta
 Santa Fe, NM 87501
 (505) 983-9433      Fax: (505) 989-4844
 **During Covid:   (505) 690-2193**
 daniel.yohalem@gmail.com

 Katherine Murray
 P.O. Box 5266
 Santa Fe, NM  87502
 kemurraylaw@gmail.com
 505-670-3943

 *Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that a copy of Plaintiff Antonio DeVargas as personal representative's

Response to Defendant Olivares' Motion to Quash Subpoena was served electronically on

January 13, 2022, to counsel for Defendants as follows:

Jonlyn M. Martinez
P.O. Box 1805
Albuquerque, NM 87103-1805
jonlyn@jmartinezlaw.net

Christa Hazlett
Conklin Woodcock & Ziegler
320 Gold Ave SW
Albuquerque, NM 87102
cmh@conklinfirm.com

Respectfully submitted,
s/Richard Rosenstock