IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ANTONIO DEVARGAS, as the Personal Representative
of the Estate of Carmela DeVargas, deceased, and
A.D., by and through his Adoptive Father and
Next Friend Antonio DeVargas,**

    Plaintiff,

v.                                                                                    1:21-cv-00271-RB-SCY

**THE BOARD OF COUNTY COMMISSIONERS
FOR SANTA FE COUNTY and PABLO SEDILLO
III, DEREK WILLIAMS, MELQUIADES
OLIVARES, LIEUTENANT ROJAS and CAPTAIN
RIOS, in their Individual Capacities,**

    Defendants.

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER

Defendant Melquiades Olivares, M.D., by and through his attorneys Conklin, Woodcock & Ziegler, P.C., submit this Reply in Support of Motion to Quash Subpoena and for Protective Order.

Dr. Olivares moved to quash Plaintiff's subpoena to the New Mexico Medical Board, which seeks private and confidential information protected from disclosure by state statute. The subpoena asks for all documents concerning any complaint against Dr. Olivares over a ten-year period, and all investigative material related to those complaints. Plaintiff has failed to show that the purported relevance of these documents is sufficient to overcome the interests of Dr. Olivares, his patients, and the State of New Mexico in keeping these documents confidential. The subpoena should be quashed.

1

I.   **PLAINTIFF HAS NOT SHOWN THAT THIRD-PARTY MEDICAL BOARD COMPLAINTS OR INVESTIGATIONS ARE LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

Plaintiff argues that Medical Board complaints and investigations are relevant to his claim regarding Dr. Olivares' care and treatment of Ms. DeVargas and his claim that the Defendant County failed to properly supervise the medical care given to inmates by Defendant Olivares. Plaintiff's claim of negligent supervision has been dismissed by this Court. *Memorandum Op. and Order,* Doc. 32 at p. 39. The only claim remaining concerning is a claim of negligence (not negligent supervision) under NMSA § 41-4-10 and a 42 U.S.C. § 1983 claim concerning care and treatment provided on October 18, 2018. Doc. 32 at p. 41-42. It is difficult to see how complaints from other patients concerning Dr. Olivares could shed light on his care and treatment of Ms. DeVargas on the dates in question.

Plaintiff argues that his care of other patients may be used to prove a custom or policy. Yet the only custom and policy claims remaining here concern whether the Santa Fe County Adult Detention Facility ("The Facility") offered suboxone or otherwise offered medication assisted treatment (MAT), and whether the jail was maintained in an unsanitary condition. The Court found that there were no credible allegations that Dr. Olivares had anything to do with sanitation of the jail, and it is not at all clear how any medical board complaints against or investigations of Dr. Olivares could shed light on the jail's policy concerning MAT and/or suboxone, or more specifically the Facility's knowledge concerning the same, given that the Medical Board is precluded from disclosing complaints to the Facility.

Plaintiff argues that these records will shed light on his claim of deliberate indifference. The only remaining deliberate indifference claim against Dr. Olivares concerns his encounter with Ms. DeVargas on October 18, 2019, when she complained of chest pain that was described by Dr.

Olivares as "pleuritic" in nature. Doc. 32 at p. 45. Plaintiff has not shown how any third-party's complaint against Dr. Olivares on a different occasion could show that he acted with deliberate indifference on that date.

Plaintiff argues that other complaints could be admissible under 404(b), which allows evidence of other crimes, wrongs or acts to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. FRE 404(b)(2). These issues typically come into play in a criminal case, such as where a criminal defendant contends that they lacked knowledge or intent to commit a crime. *See United States v. Zamora*, 222 F.3d 756 (10th Cir. 2000) (evidence that defendant robbed restaurant only hours after failed bank robbery attempt was admissible to show that defendant did have knowledge, plan, motive, and intent to rob bank because defendant testified that he lacked knowledge that his accomplice intended to rob bank); *United States v. Mares*, 441 F.3d 1152, 1158 (10th Cir. 2006) (evidence of prior instances of drug smuggling was admissible to rebut defendant's argument that she was duped into unknowingly smuggling drugs).

There is no allegation here that Dr. Olivares had a motive, intent, common scheme or plan to harm Ms. DeVargas that could somehow be proven by instances of other patient care. Nor has Dr. Olivares argued that he lacked knowledge or was mistaken about Ms. DeVargas' presenting symptoms. What is at issue here is whether or not Dr. Olivares met the standard of care with respect to Ms. DeVargas, and whether he was deliberately indifferent to her particular medical needs.

Other crimes, wrongs or acts must share similarly with the conduct at issue in order to be relevant. *Mares at 1157*. The Tenth Circuit has identified a number of non-exclusive factors in assessing similarity: (1) whether the acts occurred closely in time; (2) geographical proximity, (3)

whether the conduct at issue and the other acts share similar physical elements, and (4) whether the charged offense and the other acts are part of a common scheme. *Id at 1158, internal citations omitted.* It is highly unlikely that other complaints about care and treatment would be so similar and close in time to Ms. DeVargas' presentation on October 18, 2019, as to make it admissible to show that Dr. Olivares intended to ignore Ms. DeVargas' symptoms, much less that he intended to harm her.

Plaintiff cites to two civil cases to support his argument that the Medical Board complaints could be admissible under 404(b). The first case, *Tom v. S.B. Inc.,* No. CV 10-1257 LH/WPL, 2013 WL 12097632 (D.N.M. Mar. 29, 2013), is not applicable because the Court found that an employer's knowledge of prior wrongdoing was relevant to a negligent retention claim, and Plaintiff has no negligent retention claim here. *Id* at *1. Plaintiff also relies on *Peshlakai v. Ruiz*, 39 F. Supp. 3d 1264, 1336 (D.N.M. 2014), but that case is also not relevant here. In *Peshlakai*, the Court found that prior complaints to a restaurant that it had overserved alcohol to patrons was relevant to whether the restaurant had a culpable state of mind when it overserved patrons on the date at issue. Here, Plaintiff is not seeking complaints to the Facility or the Defendant County, but to a third party that is barred from divulging complaints to the Facility or anyone else. Complaints to the Medical Board could not show knowledge of a culpable mental state on behalf of any defendant here.

Plaintiff also relies on *Denver Policemen Protective Ass'n v. Lichtenstein,* 660 F.2d 432, 436 (10th Cir. 1981), to support his subpoena. In *Lichtenstein*, as Plaintiff notes, the Court balanced the expectation of privacy against the state's interest and whether disclosure could be made in the least intrusive manner. In that case, the district judge reviewed the documents in

camera before allowing disclosure to the plaintiff, and if the court decides that the Medical Board files could be relevant, the Court should do the same here.

If this Court denies the Motion to Quash in any part, the Court should first conduct an i*n camera* review of the documents, as the district court did in *Lichtenstein*, to determine whether any information in the Medical Board file(s) is discoverable, and whether it is probative enough to overcome the interests in patient confidentiality and the public interest in encouraging candor to the Medical Board.  If the Court finds that the relevance of these documents outweighs the privacy and public health interests at stake, discoverable information should be limited to patient complaints concerning care and treatment similar under circumstances similar to Ms. DeVargas' presentation on October 18, 2019, and within a reasonable time period of that date.  Moreover, should the Court order any documents produced, the court should order all non-party names and other personal identifiers redacted in the records to protect the privacy of persons who are not parties to this lawsuit, and enter a protective order to prevent dissemination of those records outside this lawsuit.

II. NMSA 1978 § 61-6-34 DOES NOT CONFLICT WITH FEDERAL PRIVILEGE LAW AND PRIVACY LAW AND SHOULD BE ENFORCED BY THIS COURT.

The Federal Rules of Civil Procedure provide that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P 26(b)(1) (emphasis added).  Although information need not be admissible in evidence to be discoverable, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Ellis v. Hobbs Police Dep't,* No. CV 17-1011 WJ/GBW, 2019 WL 5697787, at *4

(D.N.M. Nov. 4, 2019), quoting *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

The Court's evaluation of relevance and proportionality must be particularly stringent where personal, confidential information is involved. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648–49 (10th Cir. 2008) (*quoting Herbert v. Lando*, 441 U.S. 153, 177 (1979)). The Tenth Circuit has recognized a constitutional "right to privacy" in documents that are "of a highly personal nature." *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989). In the interest of maintaining privacy, it may often be acceptable for the trial court to limit discovery of confidential documents. *Ellis at \*4*, *citing Regan-Touhy*, 526 F.3d at 649 (*citing Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994)).

As noted by the Tenth Circuit in considering whether to order production of employment files,

> Personnel files often contain sensitive personal information, just as pharmacy files do, and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly. Indeed, the Supreme Court has underscored that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] 'a party or person from annoyance, embarrassment, [or] oppression....' " *Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) (quoting Fed.R.Civ.P. 26(c)(1)); *see also Gehring v. Case Corp.,* 43 F.3d 340, 342 (7th Cir.1994) (no abuse of discretion where "privacy interests, coupled with [the district court's] determination to keep the trial focused ..., justified limiting [plaintiff's discovery of] personnel files").

*Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648–49 (10th Cir. 2008); *see also Boyd v. Hi-Country Chevrolet*, No. CIV 10-0602 RB/KBM, 2011 WL 13289814, at \*2 (D.N.M. Apr. 5, 2011) (*quoting Regan-Touhy*.)

The Tenth Circuit has explained that "with both federal claims and pendent state law claims implicated, we should consider both bodies of [privilege] law" but where a conflict exists between the two bodies, "an analytical solution must be worked out to accommodate the conflicting policies

6

embodied in the state and federal privilege law." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1369 (10th Cir. 1997). *Chavez v. City of Farmington*, No. CV 15-171 JCH/SCY, 2015 WL 13659473, at *3 (D.N.M. Aug. 18, 2015), *on reconsideration,* No. CV 15-171 JCH/SCY, 2015 WL 13650097 (D.N.M. Nov. 25, 2015).

Thus, Tenth Circuit law does not allow this Court to simply ignore the New Mexico statute, as Plaintiff urges, but requires the Court to attempt to accommodate the interests served by the statute where doing so does not conflict with federal privilege law. Given that federal law recognizes a right to privacy, this court should find that NMSA 1978 § 61-6-34 embodies that right to privacy, for both Dr. Olivares and his patients. Given the very limited relevancy any documents could potentially have, Dr. Olivares asks the Court to rule in favor of privacy rights and quash the subpoena.

As the district court stated in *Leon v. Cty. of San Diego*, 202 F.R.D. 631, 635 (S.D. Cal. 2001), a case cited by Plaintiff:

> "[A]s a matter of comity, federal courts should attempt to ascertain what interests inspire relevant state doctrine and should take into account the views of state authorities about the importance of those interests." *Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D.Cal.1987). " 'A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial costs to federal substantive and procedural policy.' *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976). And where a 'state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule.' *Lora v. Board of Education,* 74 F.R.D. 565 (E.D.N.Y.1977)."   *Id.* at 688 (quoting *Memorial Hospital For McHenry County v. Shadur,* 664 F.2d 1058, 1061 (7th Cir.1981)).

Here, record(s) of complaints concerning a physician's care and treatment contain information that is likely more sensitive and confidential than that contained in personnel files. It will contain information about patient's medical conditions and sometimes psychological illnesses. Patient's medical files often contain information so personal it is only disclosed to a

7

physician, such as sexually transmitted diseases or details of illicit drug use.  This court should exercise its power to restrict discovery to protect third parties, who are not before the court, from embarrassment.

In *Ashcroft*, the Seventh Circuit examined whether to order a hospital to produce patient records.  The court considered the potential loss of goodwill to the hospital from the involuntary production of medical records, and weighed that against the probative value of the records.  The Court also considered the fact that quashing a subpoena for the records comported with the state's medical-records privilege law, noting that

> [C]omity "impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." See also *United States v. One Parcel of Property Located at 31–33 York Street,* 930 F.2d 139, 141 (2d Cir.1991) (per curiam). Patients, physicians, and hospitals in Illinois rely on Illinois' strong policy of privacy of medical records. They cannot rely completely, for they are not entitled to count on the state privilege's being applied in federal court. But in a case such as this in which, so far as we can determine, applying the privilege would not interfere significantly with federal proceedings, comity has required us not to apply the Illinois privilege, but to consider with special care the arguments for quashing the subpoena on the basis of relative hardship under Fed.R.Civ.P. 45(c).

*Id*. at 932-933 *quoting Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, 1061 (7th Cir.1981),

Here, the goodwill of the Medical Board, which has promised the public that their complaint will be held confidential, is also at stake.  If federal courts ignore state privacy laws, the public will be less willing to divulge their private medical information to the Medical Board, and the Board's ability to effectively regulate physicians will be hindered.  Dr. Olivares also has an interest in keeping complaints against him confidential, given that complaints may spurious, false, or unfounded.  Patients and physicians rely on the confidentiality provisions embodied in NMSA 1978 § 61-6-34, and this Court should not ignore that reliance lightly.

Likewise, physicians like Dr. Olivares may be less likely to be fully candid with the Medical Board if they know that investigation files may be disclosed. This would thwart the public interest served by the Medical Board, which is to regulate licensed health care providers "to protect the public from the improper, unprofessional, incompetent and unlawful practice of medicine." NMSA 1978 § 61-6-1.

Plaintiff next argues that any privacy concerns can be remedied with a protective order precluding further disclosure of the documents. Such an order would not prevent the invasion of privacy for the patients whose records are the subject of the subpoena. Even redacting the names and other identifiers of the patients is not adequate protection. "[W]hether the patients' identities would remain confidential by the exclusion of their names and identifying numbers is questionable at best. The patients' admit and discharge summaries arguably contain histories of the patients' prior and present medical conditions, information that in the cumulative can make the possibility of recognition very high." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 929 (7th Cir. 2004, quoting *Parkson v. Central DuPage Hospital,* 435 N.E.2d at 144. Here too, redaction will not sufficiently protect the identities of patients who have made complaints, and it certainly will not protect Dr. Olivares interest in keeping these documents confidential.

This Court should rule in favor of New Mexico strong policy of protection of Medical Board records and federal privacy rights. Those rights should not be overcome by Plaintiff's fishing expedition. However, if the Court should determine that any of the Medical Board documents are potentially discoverable, Dr. Olivares asks the Court to review those documents *in camera* to determine (1) whether they are reasonably likely to lead to the discovery of admissible evidence as argued in Section I herein; and (2) whether they require redaction of patient identifiers, including but not limited to names, ages, addresses, and social security numbers.

### III.   DR. OLIVARES CANNOT PREPARE A PRIVILEGE LOG FOR THE MEDICAL BOARD'S DOCUMENTS, AND THEREFORE DID NOT WAIVE ANY PRIVILEGE BY NOT PROVIDING A PRIVILEGE LOG.

Plaintiff argues that Dr. Olivares waived his objections to the subpoena because he did not prepare a privilege log for the documents held by the Medical Board. Dr. Olivares cannot provide a privilege log because he does not have possession or knowledge of the contents of the Medical Board's file regarding complaint(s) against him. This argument is a red herring.

In addition, "waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *United States v. Philip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) (quoting *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995))." *Roybal v. United States*, No. CV 13-610 KG/GBW, 2014 WL 12597405, at *3 (D.N.M. Apr. 3, 2014). There is no indication of bad faith here and therefore no privilege has been waived.

### IV.   CONCLUSION

WHEREFORE, Defendant Olivares respectfully requests an Order quashing the Subpoena to the NMMB, and for such other and further relief as the Court deems just. In the alternative, Dr. Olivares asks the Court to review the requested documents in camera to determine whether they are reasonably likely to lead to the discovery of admissible evidence in this lawsuit, and whether and what type of information should be redacted from any discoverable documents.

Respectfully submitted,

CONKLIN, WOODCOCK & ZIEGLER, P.C.

By: */s/ Christa M. Hazlett*
Christa M. Hazlett
Alisa Wigley-DeLara
320 Gold Ave SW, Suite 800
Albuquerque, NM  87102
Telephone:  (505) 224-9160
cmh@conklinfirm.com
*Attorney for Defendants County of Santa Fe and Olivares*

I hereby certify that on the 31st day of January 2022, I filed the foregoing electronically through the CM/ECF System which caused all parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Christa M. Hazlett*
Christa M. Hazlett