**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**ANTONIO DEVARGAS, as the Personal Representative**
**of the Estate of Carmela DeVargas, deceased, and**
**A.D., by and through his Adoptive Father and**
**Next Friend Antonio DeVargas,**

       **Plaintiff,**

**v.**                                                              1:21-cv-00271-RB-SCY

**THE BOARD OF COUNTY COMMISSIONERS**
**FOR SANTA FE COUNTY and PABLO SEDILLO**
**III, DEREK WILLIAMS, MELEQUIDES**
**OLIVARES, LIEUTENANT ROJAS and CAPTAIN**
**RIOS, in their Individual Capacities,**

       **Defendants.**

**RESPONSE TO PLANTIFF'S MOTION TO COMPEL [Document No. 79]**

COME NOW Defendants the Board of County Commissioners for Santa Fe County and

Melquiades Olivares, M.D., by and through their counsel of record, Conklin, Woodcock and

Ziegler, P.C. (Christa Hazlett), and Defendant Board of County Commissioners for Santa Fe

County, by and through their counsel, the Law Office of Jonlyn M. Martinez, LLC, and hereby

respond to the Plaintiff's Motion to Compel [Document No. 79] (hereafter Plaintiff's Motion")

as follows.

**Plaintiff's Motion To Compel Is Untimely**

On January 27, 2022, the Plaintiff sent an email to counsel for the Defendants requesting

"an extension for us to file a Motion to Compel discovery until 20 days after we finally decide on

what documents the defendants will produce that were initially the subject of an objection?" ***See***

***email correspondence***, attached hereto as Exhibit A. On February 9. 2022., the Plaintiff

submitted an email to the Court requesting a phone conference to address discovery disputes. ***See email correspondence from Mr. Rosenstock***, dated February 9, 2022, attached hereto as Exhibit B. The Defendants provided their supplemental responses to the discovery requests at issue in the Plaintiff's Motion to Compel on February 14, 2022. ***See Document No. 70***. Thereafter, on February 15, 2022, the Plaintiff sent an email to the Court regarding the issues for which the Plaintiff sought the discovery conference. ***See email related to discovery disputes***, attached hereto as Exhibit C. The Defendant responded to this email correspondence on February 21, 2022. ***Id***. Thereafter, on February 22, 2022, the Plaintiff withdrew his request for an informal discovery conference. ***See email from Mr. Rosenstock dated February 22, 2022***, attached hereto as Exhibit D. The Plaintiff did not file his Motion to Compel until March 9, 2022, twenty-three days following the Defendants' supplementation of their discovery responses.   Rule D.N.M.LR-Civ. 26.6 provides that a motion to compel must be served with twenty-one (21) days of service of an objection.[1]

> Plaintiffs' failure to file within the required deadline is sufficient grounds for the Court to deny their Motion to Compel. *See* D.N.M.LR-CIV 26.6 ("Failure to proceed within this time period constitutes acceptance of the objection."); *Thymes v. Verizon Wireless, Inc.*, No. 16-66 KG/WPL, 2017 U.S. Dist. LEXIS 18657, 2017 WL 4534838, at *2 (D.N.M. Feb. 9, 2017) (holding that a violation of Local Rule 26.6. is sufficient grounds on its own to deny a motion to compel). The Court may, however, alter the 21-day deadline on a showing of good cause. D.N.M.LR-CIV 26.6.

---

[1]  This District's Local Rules at D.N.M.LR-Civ. 26.6, entitled "Objections to Discovery" provides: a party served with objections to: • an interrogatory; • request for production or inspection; or • request for admission must proceed under D.N.M.LR-Civ. 37.1 within twenty-one (21) days of service of an objection unless the response specifies that documents will be produced or inspection allowed. In this case, the party must proceed under D.N.M.LR-Civ. 37.1 within twenty-one (21) days after production or inspection of the documents.

***Dentsply Sirona, Inc. v. Edge Endo, LLC***, No. 17-1041 JFB/SCY, 2019 U.S. Dist. LEXIS 170039, at *6 (D.N.M. Oct. 1, 2019). The Plaintiff has no good cause for failing to file his Motion to Compel within the time period agreed upon by the parties and Rule D.N.M.LR-Civ. 26.6. Therefore, the Plaintiff's Motion to Compel must be denied because it is untimely.

## Background

The facts discovered in this case belie the Plaintiff's claims and requests for discovery. With regard to the Plaintiff's claim that Carmela DeVargas contracted MRSA within the Santa Fe County Detention Center, the Defendants have obtained records from Ms. DeVargas' medical providers which reveal that Ms. DeVargas had been suffering from an abscess on her right arm for almost two years prior to her incarceration with the Defendant. ***See La Familia Records***, at 181-182, attached hereto as Exhibit E. On October 2, 2017, Ms. DeVargas had an antecubital abscess on the right side that was treated with a Ceftriaxone injection and a prescription for Keflex. ***Id***.   Next, the Defendant obtained records from Las Clinicas del Norte, which appears to be the last provider Ms. DeVargas visited, prior to her incarceration at the Santa Fe County Detention Center on September 19, 2019.[2] These records reveal that on June 27, 2019, Ms. DeVargas was taking Azithromycin 500 mg daily. ***See Las Clinicas del Norte Records***, attached hereto as Exhibit F, at 00117. Azithromycin is an antibiotic used to treat bacterial infections. On the same date, it is noted that Ms. DeVargas had a recent abscess on her arm that was drained and scabbed over. ***Id***. However, on July 2, 2019, Ms. DeVargas' abscess was drained and she

---

[2] To date, there are at least 9 providers that treated Ms. DeVargas which were not disclosed by the Plaintiff in this matter.

was started on Bactrim and Rocephin due to the extent of the cellulitis. *Id.,* at 00113-000114. On July 9, 2019, Ms. DeVargas medical record indicates that she was taking 800 mgs of Bactrim DS orally 2 times a day for this abscess. *Id.,* at 00109. On August 1, 2019, it was noted that Ms. DeVargas suffered from excoriations on her arms. *Id.,* at 00099. Thus, based on the Plaintiff's medical records, to the extent Ms. DeVargas suffered from a bacterial infection while incarcerated at the Santa Fe County Detention Center, it was likely the same infection she had suffered from for a lengthy period of time prior to her incarceration. Moreover, at no time did Ms. DeVargas disclose this infection of her history with antibiotics to Dr. Olivares or any of her medical providers in this matter.   Moreover, based on the allegations contained in the Plaintiff's Complaint, the Carmela DeVargas voluntarily injected herself with a dirty needle while inside of the Santa Fe County Detention Center. ***See Plaintiff's Complaint***, [Document No. 5, ¶ 66]. Ms. DeVargas' conduct in no way establishes that the conditions of the Detention Center were the cause of her infection. The Plaintiff has no evidence that she contracted any bacterial infection from her conditions of confinement at the Santa Fe County Detention Center. Further, the Plaintiff has not sought discovery concerning inmates housed in her same pod or cell, who would logically been subjected to the same unhealthy conditions. Instead, the Plaintiff seeks discovery from other time periods and male inmates, who were not housed with Carmela DeVargas.

Next, the Plaintiff's allegations concerning the denial of medically assisted treatment to Ms. DeVargas at the Santa Fe County Detention Center are also without merit. Again, the Plaintiff's medical records show that the medically assisted treatment Plaintiff claims the jail should have provided, Suboxone, was not effective for Ms. DeVargas.   Her medical records show she entered multiple treatment programs that prescribed her Suboxone at least as early as

2015, and she was never able to remain off other drugs, and was repeatedly kicked out of drug

treatment programs for using illegal substances. For example, her medical records in August

2019 provide the following:

> ~~but they have listed this meeting. 5/5~~
>
> General:
>     1. OUD. Homeless in Santa Fe. Desires to continue care here despite
> distance. License is suspended. States that Suboxone generally does work
> for her. Stayed clean for 4-5 days but cravings overcame maximal dose of
> bup. Has tried MTD at times when in withdrawal. Does not want to kick
> MTD in jail. Santa Fe district court. Went to Hoy once but discharged due to
> taking illicit Suboxone. Also d/c'd from SFRC due to benzos.
>     2. Anxiety. States that LFMC provider tapered Xanax too fast, would
> prefer to stay on Xanax.

*Las Clinicas del Norte Records*, at 0099, attached hereto as Exhibit F. There is simply no

evidence that if the Defendant had provided Ms. DeVargas with Suboxone while she was

incarcerated, she would not have taken any other illegal drugs while she was inside of the Santa

Fe County Detention Center. This is conjecture that is contrary to Ms. DeVargas' medical

history. As set forth above, Ms. DeVargas claims that she has only been able to stay clean for 4-5

days while on Suboxone and has been discharged from two rehabilitation programs for taking

illicit Suboxone and benzos. Moreover, from June 27, 2019 to September 17, 2019, Ms.

DeVargas was given nine separate drug screenings. *Las Clinicas del Norte Records*, at 079, 083,

086, 088, 092, 096, 110, 114, 118, attached hereto as Exhibit F. In only one of these screenings,

in this less than three-month period, did Ms. DeVargas test positive for only Suboxone (BUP).

*Id*., at 088. However, in two of her drug screenings, she did not test positive for Suboxone

(BUP), despite receiving a prescription for same. *Id*., at 083 and 093. Thus, the Plaintiff has no

evidence that Ms. DeVargas would have used only Suboxone in the Santa Fe County Detention

Center had she been given the opportunity, and therefore, according to Plaintiff, would not have injected herself with a dirty needle that caused an infection that killed her. Instead, Ms. DeVargas' own medical records reveal that the opposite is true, she continued using opiates and other drugs when prescribed Suboxone. Thus, the information sought by the Plaintiff from the Defendant is based on speculation and is a mere fishing expedition. Moreover, the Defendant has provided the Plaintiff with a copy of the applicable policy concerning its treatment of individuals incarcerated at the Santa Fe County Detention Center who suffered from opioid use disorder. ***See Medically Assisted Treatment in the Adult Facility***, attached hereto as Exhibit K.   Therefore, the Plaintiff does not need discovery to establish this policy.

## POINTS AND AUTHORITIES

The current version of Fed. R. Civ. P. 26(b)(1) provides:

(**1**) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Courts frequently deny discovery when the party requests voluminous discovery where only a small fraction of the produced documents may be relevant. ***United States v. Kellogg Brown & Root Servs***., 284 F.R.D. 22, 36-37 (D.D.C. 2012). Courts often call such attempts "fishing expeditions." ***Id***. The Tenth Circuit, in ***Murphy v. Deloitte & Touche Group Ins. Plan***, 619 F.3d 1151 (10th Cir. 2010), explained:

Rule 26(b) will not permit unlimited discovery. Rule 26(b)(1) permits discovery of only "[r]elevant information" and the discovery must "appear[] reasonably

calculated to lead to the discovery of admissible evidence." Moreover, all discovery is limited by Rule 26(b)(2), which protects against, *inter alia*, overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests....Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.

619 F.3d at 1163. In *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193

(1st Cir. 2001), the First Circuit denied additional discovery and would "not allow [respondent]

to go on a 'fishing expedition' with the mere 'hope' that it will obtain [relevant] information." In

sum, although Courts should read "relevance" broadly, they should not endorse "'fishing

expeditions,' discovery abuse and inordinate expense involved in overbroad and far-

ranging discovery requests." *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983).

Instead, Courts should tailor discovery "to the issues involved in the particular case." *Id*. Courts

should not permit a party to engage in a fishing expedition without establishing that the

requested documents are both relevant and proportional to the needs of the case. *Wilson v. City*

*of St. Petersburg*, No. 8:19-cv-1868-T-60SPF, 2020 U.S. Dist. LEXIS 257854, at *5 (M.D. Fla.

May 8, 2020), *citing Gonzalez v. Springs of Lady Lake ALF, L.L.C.*, No. 8:10-cv-1693-T-

17AEP, 2011 U.S. Dist. LEXIS 172999, 2011 WL 13302410, at *2 (M.D. Fla. Mar. 10,

2011) (citing *Premer v. Corestaff Servs., L.P.*, 232 F.R.D. 692, 693 (M.D. Fla. 2005)).

Plaintiff claims he needs discovery from the Defendant to establish his claims of custom,

pattern and practice. Thus, the Plaintiff alleges that he requires discovery concerning his

allegations that Defendants knew or should have known that without a Medication Assisted

Treatment (MAT) program, inmates like DeVargas would suffer serious illness or death. *See*

*Plaintiff's Motion*, [Document No. 79, at p. 3]. The Plaintiff also claims he requires discovery

concerning MRSA infections (resulting in one death and one serious injury to inmates housed at

the jail near in time to DeVargas' death); and evidence that drug use was rampant at the jail, as evidenced by the arrests of several jail employees. *Id*. However, a review of the Plaintiff's discovery requests reveals that his discovery requests are not tailored to obtain information concerning the issues raised above. Therefore, the Plaintiff cannot satisfy the requirements of Fed. R. Civ. P. 26(b), and in light of the facts of this case, the discovery sought by the Plaintiff is simply a fishing expedition and must be denied.

In support of his Motion, the Plaintiff relies on ***Quintana v. Santa Fe Cty. Bd. of Comm'rs***, 973 F.3d 1022, 1034 (10th Cir. 2020). In ***Quintana*** the Plaintiff alleged that Ortiz never received or did not take the kick kit withdrawal medications. The plaintiffs also claimed that a 2003 Department of Justice study put Santa Fe County on notice about deficiencies in the jail's "intake medical screening, assessment, and referral process." ***Id***. In the present case, the Plaintiff alleged in his Amended Complaint that in this same Justice Department findings it concluded: "As a result, inmates at the Detention Center with serious medical needs are at a risk for harm." ***See Plaintiff's Amended Complaint*** [Document No. 5, ¶ 17]. Thus, the Plaintiff maintains that the Plaintiff is entitled to the discovery requested. ***See Plaintiff's Motion***, [Document No. 79, at p. 3]. The ***Quintana*** case held that:

> Altogether, the allegations of intake failures preceding Ortiz's death and past process failures sufficiently state a *Monell* claim at this early stage in the proceedings. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."). Thus, we conclude that the proposed amendment would not be entirely futile in this case.

***Quintana v. Santa Fe Cty. Bd. of Comm'rs***, 973 F.3d 1022, 1034 (10th Cir. 2020). The settlement agreement entered into by Defendant County and the Department of Justice

specifically provides:

> and July 6, 2007. This Agreement replaces the MOA. This Agreement does not serve as an admission by the County that corrective measures are necessary to meet the constitutional and statutory rights of inmates at SFCADC.

> 11.    Nothing in this Agreement shall be construed as an acknowledgment, an admission, or evidence of liability of the County under CRIPA, the Constitution or federal or state law, and this Agreement may not be used as evidence of liability in this or any other civil or criminal proceeding.

*See Settlement Agreement*, attached hereto as Exhibit G, at ¶¶'s 8 and 11. The Defendant has produced the Order of Final Settlement between the County Defendant and the Department of Justice which provides that the settlement agreement and its associated Orders were terminated ten years before Ms. DeVargas' incarceration. *See Order of Final Dismissal dated October 30, 2009*, attached hereto as Exhibit H. Based on the foregoing, the Plaintiff's attempt to rely on the action brought by the Department of Justice is misplaced. Moreover, *Quintana* cited *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998), which provides that the deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. Based on the foregoing, the Department of Justice's concerns were brought to the County Defendant's attention, the County denied that its conduct violated inmates' rights but sought to correct any perceived deficiencies and eventually did so, resulting in the Order of Final Dismissal entered October 30, 2009. Thus, the Department

of Justice's investigation of 2003 cannot be used to establish a claim of deliberate indifference in 2019. Further, the Defendant has provided the Plaintiff with a copy of the applicable policy concerning its treatment of individuals incarcerated at the Santa Fe County Detention Center who suffered from opioid use disorder. *See Medically Assisted Treatment in the Adult Facility*, attached hereto as Exhibit K. Therefore, the Plaintiff does not need discovery to establish the Defendant's policy in this regard, it has the Department's written policy.

In support of his arguments, the Plaintiff cites authority that is over forty years old which concerns previous versions of the Rules of Civil Procedures. First, the Plaintiff cites *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975). However, this case addresses discovery request in an EEOC case wherein statistical information was needed to establish a pattern and practice of discrimination. The *Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir. 1980), case cited by Plaintiff simply cites to *Rich v. Martin Marietta Corp.*, at 343 (the scope of discovery "is limited only by relevance and burdensomeness, and in an EEOC case the discovery scope is extensive."). Next, the Plaintiff cites *Denver Policemen's Protective Asso. v. Lichtenstein*, 660 F.2d 432, 436 (10th Cir. 1981). However, this case does not advance the Plaintiff's arguments. *Lichtenstein* involved a lawsuit brought by police officers in an attempt to prevent their file materials from being disclosed to an individual accused of a crime. The Court determined that the accused's right to exculpatory material under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), outweighed the officers' right to privacy. *Id*. The Plaintiff also cites *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1159 (10th Cir. 2003), for the proposition that the production of documents at issue, together with other evidence, may be sufficient to create a triable issue on the plaintiff's race discrimination claim

against the officer.

The present case is not an employment case, where statistical data is required to establish a pattern and practice of discrimination, it is not a case where race discrimination is alleged, nor is it a criminal case where the accused is entitled to exculpatory material. Instead, without any evidence, the Plaintiff alleges that the housing conditions within the Santa Fe County Detention Center caused Carmela DeVargas to contract MRSA and the County's policy of refusing to provide Suboxone to Carmela DeVargas forced her to take Suboxone intravenously from a dirty needle while incarcerated.

The Plaintiff also cites *Fiacco v. Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986), for the proposition that evidence of a number of claims of police brutality was relevant to establish the defendant's lack of supervision and deliberate indifference. However, once again, the Defendant has provided the Plaintiff with its policy concerning its treatment of individuals incarcerated at the Santa Fe County Detention Center who suffered from opioid use disorder. *See Medically Assisted Treatment in the Adult Facility*, attached hereto as Exhibit K. Therefore, the Plaintiff does not need discovery to establish this policy. The Plaintiff must now attempt to establish that this policy violated her rights. Moreover, the Plaintiff has no evidence that any other individual, housed with Carmela DeVargas, has claimed that they contracted MRSA and/or sepsis from their conditions of confinement at the Santa Fe County Detention Center.

Plaintiff argues that Defendants objected to providing any information that would demonstrate Defendant County had a historical custom, pattern and practice of failing to provide adequate medical care at the SFCDC to persons known to suffer from OUD and other substance abuse. *See Plaintiff's Motion*, [Document No. 79, at p. 8]. Defendant also objected to producing

any information relevant to its historical custom, pattern and practice of failing to adequately address the widespread presence of MRSA at the SFCDC, its failure to adequately treat inmates who get MRSA and/or sepsis infections while in custody, and the prevalence of sickness and/or death of inmates from MRSA/sepsis. *Id*. To establish a municipality's liability for its employees' § 1983 violations, a plaintiff must demonstrate that the violation was "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985).

In the present case, the Defendant has a policy of treating opioid use disorder with medication, just not the medication of the Plaintiff's choosing. *See Nursing Follow-up Plan*, attached hereto as Exhibit I, *and see Medical Administration Chart for Carmela DeVargas*, attached hereto as Exhibit J. Thus, the Plaintiff must establish that the Defendant's administration of its opiate protocol caused Carmela DeVargas to suffer serious illness or death. The Plaintiff's Complaint maintains that Carmela DeVargas was incarcerated at the Santa Fe County Detention Center on September 19, 2019. *See Plaintiff's Amended Complaint*

Document No. 5, ¶ 42]. Withdrawal from opioids takes approximately 3-5 days.[3] Therefore, had Ms. DeVargas complied with her opioid protocol, her withdrawal symptoms would have dissipated within a week of her incarceration. The Plaintiff has no evidence that Ms. DeVargas would not have used other drugs had she been provided with Suboxone by the Santa Fe County Detention Center. Certainly, based on the Plaintiff's own medical records and statements, this allegation is without merit because Ms. DeVargas informed her provider that the longest period of time, she stayed clean was 4-5 days and then cravings overcame the maximal dose of "bup."

***Las Clinicas del Norte Records***, at 0099, attached hereto as Exhibit F. Thus, there is no factual basis for the Plaintiff's claim that Ms. DeVargas would not have used other drugs had she been provided with Suboxone by the Santa Fe County Detention Center. The Plaintiff is aware of the Defendant's policies in this regard. Discovery concerning other individuals' medical conditions and the Defendant's application of its policy to them does nothing to establish the Plaintiff's claim in this matter.

---



**Official Answer**
by Drugs.com

How long opioid withdrawal lasts depends on the type of opioid you are taking. For a long-acting opioid, like methadone, withdrawal may last from 7 to 14 days. For short-acting opioids like heroin or oxycodone, withdrawal may last 3 to 5 days. Opioid withdrawal is rarely life-threatening, but it can be very uncomfortable.

Opioid withdrawal syndrome is a group of signs and symptoms that occur when an opioid drug is stopped after heavy and long use. You may also have opioid withdrawal syndrome if you are on a high dose of opioid and the dose is suddenly and greatly reduced.

- For short-acting opioids, opioid withdrawal syndrome starts within 12 hours of the last use.

- For long-acting opioids, opioid withdrawal starts within 30 hours.

Next, the Plaintiff claims that Ms. DeVargas contracted MRSA from the housing conditions at the Santa Fe County Detention Center.[4] Ms. DeVargas never disclosed any skin infections to the Defendants during the incarceration at issue. Moreover, the Plaintiff has not requested information as to whether any women housed in the same cell or pod with the Plaintiff ever suffered from any MRSA infection during the period of time the Plaintiff was housed in the same cell or pod. Finally, based on the Plaintiff's medical records, the Plaintiff either had MRSA at the time of her incarceration or she contracted it when she injected herself with a dirty needle. The Defendant has policies in place which attempt to prevent the use of illegal drugs within the Santa Fe County Detention Center. Therefore, the Plaintiff cannot establish that the Defendant has a policy of permitting illegal intravenous drug use within the Detention Center. Thus, the Plaintiff's discovery requests are not designed to establish his claims, but are instead designed to harass and overburden the Defendant.

### Discovery Requests And Responses

The Plaintiff includes a section in his Motion which fails to refer to specific discovery requests and instead, lists categories. ***See Plaintiff's Motion***, [Document No. 79, at p. 9]. The Defendant will address the specific discovery requests below.

---

[4] There are two types of MRSA infections. HA-MRSA (hospital associated MRSA) and CA-MRSA (community associated MRSA). MRSA (Staph) Infection: Pictures, Symptoms, Treatment, and Prevention (healthline.com). CA-MRSA usually causes skin infections. Areas that have increased body hair, such as the armpits or back of the neck, are more likely to be infected. Areas that have been cut, scratched, or rubbed are also vulnerable to infection because your biggest barrier to germs — your skin — has been damaged. The infection usually causes a swollen, painful bump to form on the skin. The bump may resemble a spider bite or pimple. It often has a yellow or white center and a central head. In the present case, Ms. DeVargas never disclosed any skin infections to the Defendants in this matter.

Interrogatories No. 17 requested information concerning the total number of persons who entered the SFCDC as inmates during the period November 20, 2015 - November 20, 2019 who were identified during the booking and intake process as persons using addictive drugs; Interrogatories No. 18 requested, for the period January 1, 2012 - January 1, 2020, that the Defendant identify each inmate who underwent withdrawal at SFCDC from alcohol or an opioid drug, whether prescription or non-prescription; RFP No. 16 requested all documents concerning inmates who either had to be taken to the hospital and/or who died at SFCDC or at a hospital while still in the custody of the County, either from an overdose of drugs or due to withdrawal from drug or alcohol use, from January 1, 2012 through November 30, 2021. First, in light of the fact that the Plaintiff is in possession of the Defendant's policies concerning its treatment of individuals suffering from opioid use disorder, the Plaintiff provides no explanation as to how the information sought is relevant. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Next, Plaintiff's discovery requests are grossly overbroad and unduly burdensome in scope, and in many instances producing the records Plaintiff seeks would violate federal law and invade the privacy of current and former detainees who are not parties to this lawsuit.

These discovery requests are an example of the overbroad and overly burdensome nature of the Plaintiff's discovery requests. The first interrogatory seeks information over a five-year period, and requests that the Defendant review all inmates' files to determine whether each inmate disclosed during intake that they were using addictive drugs, not simply opiates that could potentially be treated with a MAT program.   Interrogatory No. 18 requests that the

Defendant provide information over an eight year period time and asks the Defendant to report whether any of these individuals who underwent withdrawal from any addictive substance, was hospitalized or died. It is unclear how this information would establish the Plaintiff's claim concerning her opioid use disorder in this matter. In the present case, the Plaintiff has not alleged, nor could she, that she was successfully treating her OUD with Suboxone. The Defendant freely admits that it does not have the MATs program sought by the Plaintiff in this matter. The program in place is described in the Medically Assisted Treatment in the Adult Facility. *See Medically Assisted Treatment in the Adult Facility*, attached hereto as Exhibit K. Defendant County has agreed that it would consider continuing the prescription of Suboxone for a recently incarcerated inmate, if they met the following conditions: proof of a valid Suboxone prescription from a pharmacy, and a UA which indicated the current use of Suboxone and no other substances. *Id*. The Plaintiff did not meet this criteria. *See Plaintiff's Intake UA results*, attached hereto as Exhibit L. In fact, her drug screening at the time of intake reveals that the Plaintiff did not test positive for Buprenorphine. *Id*. Instead, she tested positive for Benzos, Opiates, Amphetamines, THC, Cocaine and Meth. *Id*. Moreover, it is unclear whether any of the individuals booked into the Santa Fe County Detention Center were successfully treating their addiction with a MATs program. In fact, taking other medications along with Suboxone can cause a fatal overdose. *See Deposition of Dr. Laura Brown*, at p. 97, line 19 to p. 98, line 4, attached hereto as Exhibit M, and *see draft Buprenorphine Treatment Agreement*, at ¶¶'s 7 and 8, attached hereto as Exhibit N; New Mexico Treatment Guidelines for Medical Providers Who Treat Opioid Addiction Using Buprenorphine, attached hereto as Exhibit O, available at https://www.ihs.gov/sites/opioids/

16

themes/responsive2017/display_objects/documents/unmtreatmentguidelines2012.pdf. Thus,

providing the MATs program to individuals taking other street drugs, alcohol and other

prescription medication is so dangerous that it could result in accidental overdose, over-sedation,

organ failure, coma, or death. *Id*. Finally, the inmates incarcerated at the Santa Fe County

Detention Center are entitled to their right to privacy and they are protected by HIPAA, as

further discussed herein.

      RFP No. 16 requested all documents concerning inmates who either had to be taken to

the hospital and/or who died at SFCDC or at a hospital while still in the custody of the County,

either from an overdose of drugs or due to withdrawal from drug or alcohol use, from January 1,

2012 through November 30, 2021. The Defendant does create a list of individuals taken to the

hospital, it does not compile data in the manner requested. Moreover, this Request is overbroad

and seeks confidential information concerning drug abuse treatment. The Plaintiff's allegations

related to OUD, not other drugs or alcohol. The Plaintiff provides no information concerning

how this information establishes his claim, when as set forth above, he is in possession of the

Defendant's policy.

      Recent case law in this district has recognized that MAT programs are not yet the

standard of care in jails, much less a constitutional requirement. ***See Gallegos v. Bernalillo***

***County Board of Commissioners***, 2017 WL 3575883, 2017 U.S. Dist. LEXIS 131396, No. CIV

16-0127 JB/WPL. (D.N.M. Aug. 17, 2017), fn 31 ("The New Mexico Corrections Department's

policy is not aberrational: In the United States, few jail or prison inmates receive medication

assisted treatment for opioid use disorder during incarceration. In 2008, fewer than 2000

prisoners, less than 0.1% of the total prison population, received buprenorphine or methadone.

Though 28 state prison systems report offering methadone, over half limit treatment to select populations, such as pregnant women or individuals with chronic pain. Major reasons for not offering medication during incarceration include strict federal laws governing administration of [medicated assisted treatment], preference for drug free detoxification, as well as ideological opposition to [medication assisted treatment]).

Plaintiff's requests seek medical records for non-parties. These medical records are protected by the Health Insurance Portability and Accountability Act of 1996 and its implementing regulations found at 45 CFR Part 160 and Part 164.   To the extent that the medical records contain information regarding substance abuse, they are protected by the confidentiality rules at 42 CFR Part 2.   They are also protected by the constitutional right to privacy. Disclosing medical records protected under 42 C.F.R Part 2 would require the patient's consent, or notice to the patient followed by an evidentiary hearing at which the court would have to find good cause to produce the records.   To make a good cause determination the court must find that:

(1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

42 C.F.R. Section 2.64. The Plaintiff's suggestion that information requested be produced pursuant to the Confidentiality Order entered in this matter is unavailing. Plaintiff's suggestion requires that the Defendant violate federal law and the privacy rights of third parties. Thus, the Defendant properly objected to the Plaintiff's discovery requests.

RFP No. 13 requested all documents concerning all arrests of inmates and/or corrections officers at SFCDC for possession or sale of illegal drugs from January 1, 2012 through

November 30, 2021; and RFP No. 25 requested all documents concerning illegal drugs and drug paraphernalia found in SFCDC from January 1, 2012 through November 30, 2021. Once again, the Plaintiff seeks information that is not relevant to these proceedings. Information concerning arrests and drug paraphernalia do nothing to establish the Plaintiff's claims in this matter. The information sought is not proportional to the needs of this case, overly broad, unduly burdensome and amounts to an improper fishing expedition.

Interrogatory No. 19 requested that the Defendant identify each inmate who, from January 1, 2012 - January 1, 2020, suffered a MRSA infection while in the custody of SFCDC; Interrogatory No. 20 requested, for the period January 1, 2012 up to the present date, that the Defendant identify each inmate who died, either at the SFCDC or in a hospital while in the custody of Santa Fe County, from a drug overdose, a MRSA infection, suicide (if the inmate had indicated that he or she used illicit drugs during the booking process), and/or for any reason that resulted in a claim of negligent and/or deliberately indifferent medical treatment being asserted against Santa Fe County; specifying the date and reason for the person's death. RFP No. 9 requested that Defendant produce all medical records concerning inmates at SFCDC, including but not limited to records of Ronald Trujillo and Rex Corcoran, who were treated for MRSA infection or sepsis from January 1, 2012 through November 2021; RFP No. 15 requested all SFCDC intake and admission records for SFCDC inmates who reported at the time of intake that they used illegal drugs other than marijuana from January 1, 2012 through November 30, 2021; and RFP No. 27 requested all documents concerning MRSA and/or other infectious disease outbreaks in SFCDC, excluding those attributable to Covid-19, from January 1, 2012 through November 30, 2021.

Once again, the Plaintiff has requested that the Defendant review thousands of files to provide him with confidential and protected health and substance abuse information that does nothing to establish the Plaintiff's claims in this matter. Again, the Plaintiff is in possession of the Defendant's policies concerning the treatment of OUD. The Plaintiff must now establish that this policy violated Carmela DeVargas' rights. The conduct of third parties and their drug use cannot possibly establish that the Defendant violated Ms. DeVargas' rights.

Next, the information the Plaintiff seeks concerning MRSA over a nine-year period does not establish that the Plaintiff contracted MRSA at the Santa Fe County Detention Center. Evidence that other inmates suffered from MRSA does not establish that the Defendant had unsanitary conditions that included MRSA. Thus, the information sought is not relevant, expensive and overburdensome. It is also not proportional to the needs of the case.

Plaintiff has requested medical records for detainees Rex Corcoran, Ronald Trujillo and any others who had MRSA or sepsis over a ten-year period, and all documents concerning MRSA and/or other infectious disease outbreaks in SFCDC, excluding those attributable to COVID-19, over a ten-year period.   First, these requests encompass medical records of non-parties for a ten-year period.   Second, no infectious diseases other than MRSA are relevant here.   Infectious diseases include the flu, viral infections, ear infections, urinary tract infections, etc.   Plaintiff has not tailored these requests to the needs of their case. Again, the Plaintiff is requesting that this Court permit him to engage in a fishing expedition that does not seek relevant evidence. The Plaintiff has provided no information concerning how the discovery sought establishes the Plaintiff's claims in this matter.

Plaintiff expects the Defendant to search through every inmate's file in this nine-

year period to determine whether they were treated for MRSA or sepsis. However, based

on the Plaintiff's question, the MRSA or sepsis infection may have been contracted outside

of the Santa Fe County Detention Center.[5] Moreover, a request for information concerning

MRSA likely implicates that inmate's medical records concerning their addiction, which

triggers the analysis concerning 42 C.F.R. Section 2.6 set forth above. Finally, the Plaintiff

has requested specific medical records concerning two male inmates, Ronald Trujillo[6] and

Rex Corcoran.

RFP No. 20 requested that Defendant produce all SFCDC medical records for

Ricardo Ortiz, Breanna Vasquez, John DeLaura, Thomas Peterson, Gilbert Garcia, Peter

Smith, Thomas Ferguson, Michael Lopez, Ralph Ortiz, Rex Corcoran, Adrien Hern, Torin

Rocha, and Eusema Rodriguez for the three months prior to each of their deaths and records

of autopsies conducted for them after their deaths; RFP No. 31 requested that the Defendant

produce all medical records, intake records and legal complaints that concern the inmate

who suffered "a severe brain infection, probably caused by IV drug use" around 2015 that

resulted in litigation against Defendant Santa Fe County as referenced in the October 21,

2019 email from Kat Ramos, RN, to Captain Rios and Captain Roybal; and RFP No. 31

---

[5]  **Risk factors for CA-MRSA**
- **Participating in contact sports.** MRSA can spread easily through cuts and scrapes and skin-to-skin contact.
- **Living in crowded or unsanitary conditions.** MRSA outbreaks have occurred in military training camps, child care centers and jails.
- **Men having sex with men.** Men who have sex with men have a higher risk of developing MRSA infections.
- **Having HIV infection.** People with HIV have a higher risk of developing MRSA infections.
- **Using illicit injected drugs.** People who use illicit injected drugs have a higher risk of MRSA infections.

MRSA infection - Symptoms and causes - Mayo Clinic

[6]  It appears the Request seeking records for Ronald Trujillo is actually seeking records for Ronald Martinez.

requested that the Defendant produce all medical records, intake records and legal complaints that concern the inmate who Correctional Officer Rocio Gonzales referred to in her December 28, 2021 deposition testimony as having contracted a staph or MRSA infection at the Santa Fe County Detention Center.   All of these inmates have a right to privacy, which Plaintiff asks this Court to ignore wholesale. Plaintiff alleges without any evidence whatsoever that *all* of the inmates identified in RFP 20 suffered from inadequate medical care in the Facility. Plaintiff does not have a pattern or practice claim regarding generalized inadequate medical care, his claim is limited to the County's policy on MAT and alleged unsanitary conditions.   (Memorandum Op. and Order, Doc. 32, at pp 41-42.) Plaintiff has not alleged, much less provided any proof, that these inmates qualified for MAT treatment, or that they were even addicted to opiates.

Further, with respect to inmates Corcoran and Martinez' alleged MRSA infections, Plaintiff provides no explanation as to how an infection could have spread from a male housing unit to Ms. DeVargas in a female housing unit. Moreover, in a recent deposition, counsel for the Plaintiff produced records concerning Ronald Martinez, and therefore already has those in his possession.   It is unclear why the Plaintiff is requesting records from the Defendant when he already has them in his possession.

## CONCLUSION

Plaintiff claims that the information he seeks, which involves inmates suffering from Opioid Use Disorder and/or inmates who contracted MRSA and/or sepsis at the facility is critical to proving the federal pattern and practice claim asserted in Count I of the Amended Complaint as per Judge Brack's Memorandum Opinion and Order, Doc. 32, at pp. 17-18. However, Judge

Brack's Opinion provides the following:

> Here, Plaintiffs assert that: (1) the County maintained an unconstitutional custom of failing to adequately treat pretrial detainees for withdrawal and of failing to properly clean the jail, which (2) caused DeVargas's death, and (3) the County's refusal stemmed from deliberate indifference. Defendants argue that Plaintiffs cannot show such a custom, as jail staff treated DeVargas with Librium, just not with the treatment of her choice. (Doc. 10 at 13–14.) Plaintiffs assert that this argument misses the point: Olivares prescribed medications to treat symptoms of withdrawal, but he did not prescribe any medications to treat DeVargas's disease—OUD. (Doc. 21 at 50.) Plaintiffs' argument has merit at this stage. Plaintiffs have alleged that DeVargas suffers from OUD, a chronic disease, for which she was prescribed Suboxone. They further allege that the County, with knowledge of the efficacy of MAT programs and the detrimental effects of denying inmates access to MAT programs, refused to implement such a program, despite the high number of inmates at the jail with OUD and the history of inadequate medical care. Plaintiffs further allege Defendants knew or should have known that without a MAT program, inmates like DeVargas would suffer serious illness or death. Although Defendants cite several cases to show that MAT programs are not standard at all jails (see, e.g., Doc. 27 at 25), the Court finds that Plaintiffs have alleged facts sufficient to show an unconstitutional custom regarding the jail's failure to adequately treat detainees under these circumstances.
>
> Similarly, Plaintiffs assert facts to show that the County had notice of the jail's unsanitary conditions because of the 2003 DOJ investigation; that MRSA infections were common (resulting in one death and one serious injury to inmates housed at the jail near in time to DeVargas's death); and that drug use was rampant at the jail, as evidenced by the arrests of several jail employees. Again, even if "recovery is very remote and unlikely," Plaintiffs have plausibly alleged a Monell claim, and their Complaint may proceed. See Quintana, 973 F.3d at 1034 (quotation omitted). The Court will deny the motion with respect to this claim.

[Document No. 32, at pp's 17-18]. Since this Opinion was authored, the Defendant has provided the Plaintiff with its policies and procedure concerning its treatment of inmates with OUD. These policies reflect that the Defendant does not provide the kind of medically assisted treatment desired by the Plaintiff. With this information, the Plaintiff must now establish that this policy violated Carmela DeVargas' rights. Information concerning other inmates do not establish a violation of Ms. DeVargas' rights and are immaterial in this matter. Finally, with regard to the

Plaintiff's claim concerning MRSA, the Defendant has addressed the inapplicability of the 2003

Department of Justice investigation above. The Plaintiff must establish that Ms. DeVargas'

conditions of confinement caused her to contract MRSA. The Plaintiff cannot establish any facts

with regard to Ms. DeVargas' conditions of confinement by reviewing the records of other

inmates housed at different times and in different pods separate and apart from those in which

Ms. DeVargas was housed. There could not possibly be any method of spreading this purported

infection between these individuals. Therefore, based on the foregoing, the Defendants request

that this Court deny the Plaintiff's Motion to Compel.

> Respectfully submitted,
>
> By */s/ Jonlyn M. Martinez*
> JONLYN M. MARTINEZ
> Attorneys for Defendants
> P.O. Box 1805
> Albuquerque, NM   87103-1805
> (505) 247-9488
>
> By:   */s/ Christa M. Hazlett*
> CHRISTA M. HAZLETT
> Attorney for Board of Commissioners of
> Santa Fe County and Melquiades Olivares,
> M.D.
> 320 Gold Ave SW
> Albuquerque, NM 87102
> (505) 224-9159

I HEREBY CERTIFY that a true copy
of the foregoing was sent via CM/ECF
to all counsel of record on March 23, 2022:


       /s/