IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTONIO DEVARGAS, as the Personal
Representative of the Estate of Carmela DeVargas,
deceased, and A.D., by and through his Adoptive
Father and Next Friend Antonio DeVargas,

    Plaintiffs,

v.                                                          Case No. 1:21-cv-00271-RB-SCY

THE BOARD OF COUNTY COMMISSIONERS
FOR SANTA FE COUNTY and PABLO SEDILLO
III, DEREK WILLIAMS, MELEQUIDES
OLIVARES, LIEUTENANT ROJAS and CAPTAIN
RIOS, in their Individual Capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL

After Carmela DeVargas died in custody at Santa Fe County Detention Center, her father Antonio DeVargas and her son A.D. (by and through Mr. DeVargas) sued the Board of County Commissioners for Santa Fe County ("the County") as well as various employees of the detention center in their individual capacities. Presently before the Court is Plaintiffs' Motion to Compel Discovery, filed March 9, 2022 (Doc. 79) and fully briefed March 25, 2022 (Docs. 80, 81).[1]

Plaintiffs' claims are laid out in full in the Court's Memorandum Opinion and Order regarding the motion to dismiss (Doc. 32) so, rather than repeating them here, the Court will summarize their claims as they are relevant to the present motion to compel. Plaintiffs allege that when Ms. DeVargas was incarcerated at the Santa Fe County Detention Center ("SFCDC") she

---

[1] Following the close of briefing, Plaintiffs filed a supplemental authority, attaching deposition transcripts not previously available. Doc. 83.

suffered from Opioid Use Disorder ("OUD"). Defendants failed to treat her OUD by failing to provide Suboxone and failing to implement the Medication-Assisted Treatment ("MAT") program. These failures caused Ms. DeVargas to inject illicit Suboxone she obtained while at SFCDC. Defendants also failed to maintain a clean facility. Ms. DeVargas developed a MRSA/sepsis infection from either a dirty needle used to inject illicit Suboxone or from the filthy conditions at SFCDC. Defendants then failed to provide her adequate medical care. Plaintiffs also allege SFCDC had a pattern or practice of failing to keep the facility clean and failing to provide adequate medical care to persons known to suffer from substance abuse and from MRSA/sepsis infections. After the Court granted in part a motion to dismiss, Plaintiffs' remaining claims are: deliberate indifference under the Eighth and Fourteenth Amendments against the County for failing to implement a MAT program, refusing to treat DeVargas's OUD with Suboxone or similar medication, and allowing the jail to remain in an unsanitary condition; deliberate indifference under the Eighth and Fourteenth Amendments against medical director Melequides Olivares for failing to treat Ms. DeVargas on October 18; violations under the Eighth and Fourteenth Amendments for the County's policy or custom regarding shackling; battery against the County under the New Mexico Tort Claims Act; and A.D.'s loss of consortium claim against the County. Doc. 32 at 41-42.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Discovery relevance is "to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (internal quotation and citation omitted). And while "relevancy in discovery is broader than that required for admissibility at trial, the object of inquiry must have some evidentiary value" to be discoverable. *Dorato v. Smith*, 163 F. Supp. 3d 837, 865-6 6 (D.N.M. 2015) (quotation marks omitted).

## DISCUSSION

As an initial matter, Defendants argue that the motion to compel is untimely. Plaintiffs served their first set of requests for production and interrogatories on Defendant County on December 9, 2021. Defendants responded on January 17, 2022 and on February 4, 2022 to Plaintiffs' second set of requests for production. On January 27, 2022, the parties agreed to extend the deadline for filing motions to compel until 20 days after the parties "finally decide on what documents the defendants will produce that were initially the subject of an objection." Doc. 80-1.

Plaintiffs requested a telephonic conference with the Court on February 9, 2022, regarding their discovery questions. The Court instructed the parties, by February 15, 2022, to submit a short statement defining the issues and each side's contentions in advance of the telephonic conference. In the meantime, on February 14, 2022, the County provided supplemental answers to Plaintiffs' discovery questions. Plaintiffs submitted their statement to the Court on February 15, 2022, but Defendants did not submit their statement until February 21,

2022. In light of Defendants' late and lengthy statement,[2] Plaintiffs withdrew their request for a telephonic conference on February 22, 2022, indicating they would file a motion to compel instead. Plaintiffs then filed their motion to compel on March 9, 2022.

Defendants argue that Plaintiffs' March 9, 2022 motion to compel is untimely because it comes 23 days after Defendants' supplemental discovery responses on February 14, 2022. Indeed, this Court's local rules provide that "[a] party served with objections to an interrogatory; request for production or inspection; or request for admission must proceed [with a motion to compel or for protective order] within twenty-one (21) days of service of an objection . . . . Failure to proceed within this time period constitutes acceptance of the objection." D.N.M. LR-Civ. 26.6. However, given the procedural history between the parties, the Court does not find that Plaintiffs' failure to file their motion 21 days after receiving Defendants' supplemental discovery constitutes a reason to deny the motion before considering its merits. *See* D.N.M. LR-Civ. 1.7 (the District's local rules "may be waived by a Judge to avoid injustice"). During the time between receiving the supplements and filing their motion, Plaintiffs sought an informal conference with the Court to avoid the expense of briefing. Once it became clear that these issues were not suitable for an informal conference, Plaintiffs promptly filed their motion. Additionally, the parties agreed to extend the deadline for filing motions to compel until 20 days after the parties "finally decide on what documents the defendants will produce that were initially the subject of an objection," (Doc. 80-1), and it is not clear when that extension expired.

Next, before turning to the specific discovery questions in dispute, that Court notes that several of Defendants arguments go to the merits of this case: that Ms. DeVargas did not contract

---

[2] The Court instructed the parties to submit a "short, one-page or less email, defining the discrete issue and briefly summarizing each side's contentions." Doc. 80-2. Defendants' late submission consisted of nine pages. *See* Doc. 80-3.

MRSA while at SFCDC, but that she had been suffering from an abscess on her arm for almost two years prior to her incarceration; that Ms. DeVargas's medical records show Suboxone was not effective on her; that there is no evidence, even if given Suboxone, that Mr. DeVargas would have stayed off other illicit drugs; that Plaintiffs cannot rely on a 2003 Justice Department investigation at SFCDC to establish a deliberate indifference claim; that SFCDC has a policy of treating OUD with medication, but not necessarily medication of the inmate's choosing; and that MAT programs are not a constitutional requirement. The Court is not presently considering the merits of this case and so does not address these arguments in deciding this motion to compel. Instead, the Court considers whether Plaintiffs are entitled to discovery related to their allegations and these merits arguments. The Court thus turns to the specific discovery questions in dispute.

1. **Discovery Questions That Seek Irrelevant Information**

The first set of discovery questions the Court considers are those the Court finds overbroad and therefore seeking irrelevant information.

> **Interrogatory No. 17:** State the total number of persons who entered SFCDC as inmates during the period November 20, 2015 to November 20, 2019 and state the number who were identified during the booking and intake process as persons using addictive drugs, whether prescription or non-prescription, including but not limited to opioids and methamphetamines and state the type of drug identified as to each such inmate.
>
> **Interrogatory No. 18:** For the period January 1, 2012- January 1, 2020, identify each inmate who underwent withdrawal at SFCDC from alcohol or an opioid drug, whether prescription or non-prescription, and state a) the date(s) on which this withdrawal occurred, b) whether the withdrawal occurred from alcohol or drug use and specify the type of drug, c) whether the inmate was hospitalized because of the withdrawal or the complications from withdrawal and, if so, state the date(s) this hospitalization occurred, and d) whether the inmate died at the jail or at the hospital as a result of the withdrawal or the complications from withdrawal and, if so, state the date of death.

> **Request for Production No. 15**: Please produce all SFCDC intake and admission records for SFCDC who reported at the time of intake that they used illegal drugs other than marijuana from January 1, 2012 through November 20, 2021.
>
> **Request for Production No. 16:** Please produce all documents concerning inmates who either had to be taken to the hospital and/or who died at SFCDC or at a hospital while still in the custody of the County, either from an overdose of drugs or due to withdrawal from drugs or alcohol use, from January 1, 2012 through November 20, 2021.

Plaintiffs argue that these questions are relevant to their claim that the County refused to implement the MAT program to treat OUD when it knew how widespread OUD was among inmates and how often inmates suffered serious injuries and death from illicit drugs inside the facility. But their requests seek information beyond the scope of what they assert is relevant for their claims. At issue in this case is SFCDC's treatment of Ms. DeVargas's OUD (or failure to treat it) and SFCDC's alleged pattern and practice regarding failure to provide adequate medical care to persons with OUD or those suffering MRSA/sepsis infections. These discovery questions seek information irrelevant to those claims, such as information regarding inmates addicted to other drugs, including methamphetamines, or alcohol.

> **Interrogatory No. 20**: For the period January 1, 2012 up to the present date identify each inmate who died, either at the SFCDC or in a hospital while in the custody of Santa Fe County, from a drug overdose, a MRSA infection, suicide (if the inmate had indicated that he or she used illicit drugs during the booking process) and/or for any reason that resulted in a claim of negligent and/or deliberate indifferent medical treatment being asserted against Santa Fe County, specifying the date and reason of the person's death.

Here, Plaintiffs allege that Ms. DeVargas died of a MRSA/sepsis infection after obtaining illicit Suboxone in SFCDC or from the direct conditions at SFCDC. Inmate deaths from suicide or any other medical treatment are irrelevant to this claim and irrelevant to establishing a pattern and practice regarding MRSA/sepsis infections and the presence of illicit drugs inside the facility.

**Request for Production No. 27**: Please produce all documents concerning MRSA and/or other infectious disease outbreaks in SFCDC, excluding those attributable to COVID-19, from January 2, 2012 through November 20, 2021.

Again, this case concerns SFCDC's pattern and practice of providing medical care to inmates with MRSA/sepsis infections. As Defendants point out, a request for all documents concerning "infectious diseases outbreaks" could include the flu and other viral infections that are beyond the scope of relevant information. In their motion, Plaintiffs assert that, in addition to MRSA and sepsis, they are only seeking "information about infectious illnesses such as meningitis and osteomyelitis, not the flu or like common illnesses." Doc. 79 at 13 n.5. This limitation is not reflected in Request for Production No. 27. Because Defendants' objection relates to the request for production issued and this request for production is overbroad, the Court will deny Plaintiffs' motion to compel Defendant to provide information responsive to this request for production.

For these reasons, the Court finds that, as currently written, Interrogatories No. 17, 18, and 20 and Requests for Production Nos. 15, 16, and 27 are overboard and seek irrelevant information. That is not to say that all the information sought by these questions is irrelevant. But, as currently written, responsive information would include both relevant and irrelevant information. And "at the end of the day, it is the parties' obligation to frame their own discovery requests and to seek to narrow any disputes with opposing counsel; the district court is obliged only to rule on the requests for enforcement or protection eventually presented to it, not to do the parties' work for them by editing discovery requests until they comply with the Federal Rules of Civil Procedure." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 650 (10th Cir. 2008); *see also Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017) ("The magistrate judge was not required to exercise his discretion to *sua sponte* fix counsel's errors and assume counsel's

responsibility of framing an appropriate discovery request. Plaintiffs' proposed holding would encourage attorneys to abdicate this responsibility in favor of phrasing their discovery requests in the broadest possible terms and placing the burden on the district court of coming up with an appropriately limited request."). The Court will thus deny the motion to compel as to these discovery questions.

## 2. Discovery Questions That Seek Non-Party Medical Information

The next category of discovery questions pertains to medical information and records regarding non-party inmates.

> **Interrogatory No. 19:** Identify each inmate who, from January 1, 2012-January 1, 2020 suffered a MRSA infection while in the custody of SFCDC, and state the date(s) this occurred, whether they were hospitalized, the dates of any such hospitalizations, the outcome of each hospitalization and identified episode of MRSA infection, whether the inmate died as a result of the infection and/or related complications, the date of each death, and whether the death occurred in hospital or SFCDC.
>
> **Request for Production No. 9:** Please produce all medical records concerning inmates at SFCDC, including but not limited to records of Ronald Trujillo and Rex Corcoran, who were treated for MRSA infection or sepsis from January 1, 2012 through November 2021.
>
> **Request for Production No. 20**: Please produce all SFCDC medical records for Ricardo Ortiz, Breanna Vasquez, John DeLaura, Thomas Peterson, Gilbert Garcia, Peter Smith, Thomas Ferguson, Michael Lopez, Ralph Ortiz, Rex Corcoran, Adrien Hern, Torin Rocha, and Eusema Rodriguez for the three months prior to each of their deaths and records of autopsies conducted for them after their deaths. Also produce the medical records for Ronald Trujillo from September 19, 2019, through November 19, 2019.
>
> **Request for Production No. 31**: Please produce all medical records, intake records, and legal complaints that concern the inmate who suffered "a severe brain infection, probably caused by IV drug use" around 2015 that resulted in litigation against Defendant Santa Fe County as referenced in the October 21, 2019 email from Kat Ramos, RN, to Captain Rios and Captain Roybal.
>
> **Request for Production No. 32**: Please produce all medical records, intake records and legal complaints that concern the inmate who Correctional Officer Rocio Gonzales referred to in her December 28, 2021 deposition testimony as

having contracted a staph or MRSA infection at the Santa Fe County Detention Center.

Defendants first object to these questions as seeking irrelevant information. They argue that because they have already produced SFCDC's policies concerning the treatment of inmates with OUD, Plaintiffs do not need any further information for their claim which seeks to establish that SFCDC violated those policies concerning Ms. DeVargas. The Court disagrees. In addition to the claim that SFCDC failed to provide adequate medical care to Ms. DeVargas, Plaintiffs allege that SFCDC engaged in a pattern and practice of failing to provide adequate medical care to persons known to suffer from substance abuse and from MRSA/sepsis infections. Information about other MRSA cases at SFCDC is relevant to that pattern and practice claim.

Next, Defendants argue that the requested information of non-parties is protected by the Health Insurance Portability and Accountability Act ("HIPAA").[3] HIPAA forbids covered entities from using or disclosing protected health information, subject to certain exceptions. 45 C.F.R. § 164.502(a). Plaintiffs do not dispute that medical information and records of other inmates are covered by HIPAA or that SFCDC is a covered entity under HIPAA, but argue that production is allowed under the protective order entered in this case.

One exception to HIPAA's protections is 45 C.F.R. § 164.512, which allows a covered entity to disclose protected health information without the written authorization of the individual,

---

[3] Plaintiffs argue the Defendants have waived any privilege objection because they did not produce a privilege log under Federal Rule of Civil Procedure 26(b)(5)(A). HIPAA, however, does not create a privilege but characterizes documents as confidential. *See Polk v. Swift*, 339 F.R.D. 189, 195 (D. Wyo. 2021). In a separate discovery Order filed the same date as the present Order, the Court explains in more detail why the Court rejects Plaintiffs' waiver argument. The Court adopts, but does not repeat, that analysis in this Order. Doc. 85.

for judicial proceedings "[i]n response to a subpoena, discovery request, or other lawful process . . . if [t]he covered entity received satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order." 45 C.F.R. § 164.512(e)(1)(iii)(B). A covered entity receives satisfactory assurance from a party seeking protected health information "if the covered entity receives from such a party a written statement and accompanying documentation demonstrating that: [t]he parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court . . . ." 45 C.F.R. § 164.512(e)(1)(iv)(A). And a qualified protective order is defined as an order of a court that

> [p]rohibits the parties from using or disclosing the protected health information for any purpose other than the litigation for which such information was requested and [r]equires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 164.512(e)(1)(v). In this case, the Court entered a Stipulated Protective Order relating to the Disclosure of Confidential Information which meets the requirements for Section 164.512(e). *See* Doc. 67. As such, disclosure of protected health information is permissible under HIPAA.[4]

---

[4] Defendants also point to 42 C.F.R. § 2.64 to argue that records containing information regarding substance abuse are protected unless certain requirements are met. Although Plaintiffs do not seek records regarding substance abuse, records about MRSA/sepsis infections could mention substance abuse if the infection was a product of injecting an illicit substance (as alleged in this case). To that end, Section 2.64 provides procedures for disclosure of substance abuse disorder patient records, 42 C.F.R. §§ 2.2, 2.64, but only applies to "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance use disorder education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States . . . ." 42 U.S.C. § 290dd-2(a). It is not clear to the Court, and neither party addresses, whether treatment at SFCDC is "conducted, regulated, or directly or indirectly assisted by any department or agency of the United States." Further, medical records of inmates who have MRSA/sepsis infections, which

Although the Court finds that the requested medical information and records meet an exception to HIPAA protection, the Court must also consider Defendants' final objection that the requested medical information is protected by the non-parties' right to privacy. The Tenth Circuit "has repeatedly interpreted the Supreme Court's decision in *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), as creating a right to privacy in the non-disclosure of personal information" by government officials. *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000); *see also Wishneski v. Dona Ana Cnty.*, No. CV 08-0348 MCA/WPL, 2011 WL 13285437, at *3 (D.N.M. June 23, 2011) ("Federal courts recognize a general right to privacy."). To that end, the Tenth Circuit has recognized a balancing test regarding disclosure of private information: "(1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 435 (10th Cir. 1981); *see also Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986) ("Due process thus implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state. Disclosure of such information must advance a compelling state interest which, in addition, must be accomplished in the least intrusive manner.").

Here, the non-party inmates have a reasonable expectation of privacy in their medical records and medical information held by SFCDC, as illustrated by the case *A.L.A. v. W. Valley City*, 26 F.3d 989, 990 (10th Cir. 1994). In *A.L.A.*, the plaintiff sued the city and police officers after an officer disclosed to the plaintiff's sister that the plaintiff was HIV positive—information

---

could have resulted from injecting illicit substances, do not appear to fall in the category of records "maintained in connection with the performance of any program or activity relating to substance use disorder education, prevention, training, treatment, rehabilitation, or research." Thus, the Court does not need to do a Section 2.64 analysis.

11

the officer learned after searching the plaintiff and finding HIV test results in his wallet. 26 F.3d at 990. The Tenth Circuit held the plaintiff "had a reasonable expectation of privacy in the [test] results," and that "[t]here is no dispute that confidential medical information is entitled to constitutional privacy protection." *Id.*

The next factor, if disclosure serves a compelling state interest, weighs slightly in Plaintiffs' favor. Plaintiffs are not seeking disclosure for some penological purpose, which courts have found to be a legitimate state interest. *See Leiser v. Moore*, No. 16-4110-DDC-KGS, 2017 WL 4099469, at *4 (D. Kan. Sept. 15, 2017), *aff'd*, 903 F.3d 1137 (10th Cir. 2018) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987))). Instead, Plaintiffs seek the requested information to "ascertain[] the truth." Doc. 79 at 16. In general, courts treat discovery liberally. *See Smith v. Ford Motor Co.*, 626 F.2d 784, 792 (10th Cir. 1980) (1970 amendments to Federal Rule of Civil Procedure 26 liberalized discovery process based on "unfairness" standard); *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1119 (10th Cir. 2021) (Rule 56(d) discovery requests should normally be construed liberally) (citation omitted); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (deposition-discovery rules to be afforded liberal treatment). Beyond this norm, discovery in Section 1983 cases has a particular importance. *See Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1197, 1219 (D.N.M. 2019) (courts construe privileges particularly narrowly in § 1983 cases due to fundamental importance of this area of the law and "the public has a strong interest in preserving the free flow of information relating to health care provision and standards in the context of a jail or prison's medical facility").

Most significantly, turning to factor three, Plaintiffs' discovery requests as currently written do not call for disclosure in the least intrusive manner. The relevant information that Plaintiffs need for their deliberate indifference pattern and practice claim is information on the

medical treatment (or lack of medical treatment) for inmates at SFCDC who suffered from OUD or MRSA/sepsis. This information is available to Plaintiffs without disclosing private information, such as by redacting medical records to remove names or through publicly filed lawsuits and complaints against SFCDC. Accordingly, disclosing the complete, unredacted medical records and medical information of non-parties is not the least intrusive manner.

Balancing the *Lichtenstein* factors, and to address concerns presented in the third prong, the Court orders the production of redacted information and documents responsive to Integratory No. 19 and Requests for Production No. 9, 20, 31, and 32. Indeed, Plaintiffs appear to concede that redaction would be appropriate in some instances. *See* Doc. 81 at 12 ("Moreover, many of these records can be produced with the names of the inmates redacted and a letter or number inserted as to each."). Although redacting the names from medical records of specifically named inmates is unnecessary, redacting other personal information in their records (such as social security numbers) is appropriate.

### 3. Discovery Questions For Which The Motion To Compel Is Granted

Lastly, the Court grants the motion to compel as to two questions.

**Request for Production No. 13**: Please produce all documents concerning all arrests of inmates and/or corrections officers at SFCDC for possession or sale of illegal drugs from January 1, 2012 through November 30, 2021, including but not limited to documents concerning the dismissal or suspension of any SFCDC employee for such offenses and documents concerning the investigation by Defendants into each of those allegations.

**Request for Production No. 25**: Please produce all documents concerning illegal drug and drug paraphernalia found in SFCDC from January 1, 2012 through November 20, 2021.

Plaintiffs assert that this information is relevant to show that narcotics use at SFCDC was widespread. The Court agrees. In the Memorandum Opinion and Order on the motion to dismiss, Judge Brack found that Plaintiffs alleged a deliberate indifference claim against SFCDC for the

jail's unsanitary condition, including "that drug use was rampant at the jail, as evidenced by the arrests of several jail employees." Doc. 32 at 17. As such, information regarding arrests made at SFCDC for illegal drugs and information on drugs and drug paraphernalia at SFCDC is relevant to Plaintiffs' pattern and practice claim regarding the conditions of the jail.[5]

## CONCLUSION

For these reasons, Plaintiffs' Motion to Compel Discovery (Doc. 79) is GRANTED IN PART and DENIED IN PART as follows:

- The motion is denied as to Interrogatories No. 17, 18, and 20 and Requests for Production Nos. 15, 16, and 27.

- The motion is granted in part as to Interrogatory No. 19 and Requests for Production Nos. 9, 20, 31, and 32. Defendants shall provide the requested information and documents, but may redact names and personal information consistent with this Order.

- The motion is granted as to Request for Production Nos. 13 and 25.

Within 30 days of the entry of this Order, Defendants shall produce responsive information as laid out in this Order. Each side shall bear their own fees and costs for bringing and responding to this motion.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

---

[5] Although not raised by Defendants, the Court has some concern about requiring disclosure of confidential methods of investigation. Defendants may submit, for in camera review, any responsive documents that they believe should not be disclosed because it reveals sensitive information about the manner of a particular investigation. Further, where some other compelling reason for redactions not contemplated in this Order exists, Defendants may submit for in camera inspection such proposed redactions.